Callanan v. Brown & Co.

## CALLANAN v. BROWN & Co.

1. **Bonds:** OF MUNICIPAL CORPORATIONS. Bonds issued by a city for the purpose of raising money to prosecute improvements are classed as negotiable securities, and subject, in their sale, to the rules governing personal property, of which they form a part.

2. **Warranty:** IN SALE OF CITY BONDS. To constitute a warranty in the sale of personal property it is not essential that the word "warrant" should be used. It is sufficient if the words used import an undertaking on the part of the seller that the chattel is what he represents it to be.

3. —— RULE APPLIED. In the sale of a lot of city bonds, it was alleged that "the defendants agreed that the principal and interest of the bonds was, or should be, guaranteed and provided for by a sinking fund set aside for that purpose;" "that such representations and agreements for the securing of said bonds was a material part of the contract," etc. *Held,* that the representations alleged constituted a warranty that the bonds were or would be secured by an adequate fund for their ultimate payment.

4. —— ACCEPTANCE OF PROPERTY. The acceptance and retention of the property by the vendee will not estop him from declaring and recovering upon the breach of warranty.

5. —— MEASURE OF DAMAGES. The proper measure of damages in cases of breach of warranty is the difference between the value which the thing sold would have had at the time of the sale if it had corresponded with the warranty, and its actual value with the defect.

6. —— COMMERCIAL PAPER. While the measure of damages for the wrongful conversion of negotiable paper is *prima facie* its nominal value, it may nevertheless be shown that the real or market value, owing to the insolvency or inability of the maker or the like, is less than its nominal value, and the measure of recovery will be limited thereby.

*Appeal from Polk Circuit Court.*

FRIDAY, APRIL 21.

THE plaintiff, in his petition, states that on the 26th day of February, 1868, the defendants applied to him to sell certain bonds, and represented to plaintiff that they were contractors with the city of Memphis, in the State of Tennessee, for paving certain streets in said city with Nicolson pavement; that they had received, and were further to receive, on such contract, certain bonds of said city of Memphis, issued and to be issued therefor, and exhibited to plaintiff the contract under which they were doing said paving; that they further represented to plaintiff that such paving bonds were to be specially secured, and the payment of both principal and interest guaranteed and provided for by a sinking fund set aside for that purpose.

And on such inducement, plaintiff entered into a written contract with defendants, whereby defendants agreed, for a valuable consideration then paid to them by plaintiff, to sell and deliver to plaintiff, within thirty days from the date aforesaid, twenty bonds of the city of Memphis, in the State of Tennessee, each calling for $1,000, and bearing six per cent interest per annum, payable in semi-annual installments, and due six in five years, eight in ten years, and six in fifteen years after the issue thereof. And defendants further agreed that the principal and interest of said bonds was, or should be, guaranteed and provided for by a sinking fund set aside for that purpose by said city of Memphis, thereby meaning that defendants, by their said contract in writing, promised and agreed that the city of Memphis aforesaid had then already provided a special and adequate fund wherefrom to pay the interest and principal of said bonds, or that said city of Memphis had the power and ability and would provide such fund

prior to the maturity of the interest coupons attached to said bonds.

And plaintiff avers that such representations and agreement for the securing of said bonds was a material part of such contract, for that said city of Memphis then had issued several millions of dollars of its bonds, which were unsecured, and were worth only about fifty per cent of the nominal value thereof, while secured bonds to the amount of half a million dollars, which defendant was advised was the limit of the proposed issue for such paving, would be worth in the market nearly or quite *par*.

And thereafter, and within the time fixed in said contract, defendants delivered to plaintiff twenty bonds of said city of Memphis, called "Paving Bonds," each calling for $1,000, due as aforesaid, and bearing six per cent interest per annum, and having interest coupons attached, and payable to the bearer, dated on the —— day of ——, 1868; but said bonds contained no stipulation or agreement of said city of Memphis with the holder thereof, to guarantee the payment thereof by any fund set aside for that purpose, as hereinbefore set forth.

And plaintiff avers that said interest coupons on said bonds, as delivered to plaintiff, were not paid at maturity, and that neither the defendants nor the city of Memphis aforesaid have provided for the payment of the principal of said bonds; and that neither defendants nor said city of Memphis have set aside any sinking fund or any fund for the payment therefrom of the interest on said bonds, or whereby the ultimate payment of the principal of said bonds should also be paid; nor have the defendants in anywise performed their undertakings and agreements in that behalf as aforesaid; nor have defendants caused or procured said city of Memphis so to provide for said bonds as aforesaid; but they have wholly neglected and refused so to do; and neither at the time of making said contract, or at the delivery of said bonds, nor at any

time since has any such fund been provided or said bonds in anywise secured.

And plaintiff avers that because of such failure of defendants to so comply, or cause a compliance with their said undertaking, the said bonds have never been worth in the market more than fifty cents on the nominal dollar thereof, and are not now worth more than that sum.

And plaintiff avers that the bonds of said city of Memphis are negotiable securities whereof the title passes by delivery; that they have now, and have had since their issue, a market value, and are marketable commodities, and the subject of purchase, sale and quotation in the money and stock reports of said city of Memphis and other markets for negotiable securities in the country; that bonds like those delivered to the plaintiff, the payment of the interest and principal of which is guaranteed and provided for by a special and adequate fund, are well-known marketable commodities, and have a definite and ascertainable value; and though plaintiff admits defendants have tendered him nominal damages, yet plaintiff says by such breach of their contract by defendants, he has been damaged in the sum of $10,000, for which he asks judgment, etc.

To this petition the defendants demurred, and on the same day filed a cross demand, stating that, on the 14th day of December, 1868, defendants borrowed of plaintiff $2,500, and on that day paid $250 interest therefor for one year; and to secure the same pledged to plaintiff $5,000 of the bonds of the city of Memphis, which bore six per cent interest per annum, and run fifteen years, and which were then and ever since have been of the cash market value of $2,500, but on which said city is obligated to pay and will pay $5,000 when due with interest. And on the 14th day of December, 1869, defendants tendered plaintiff $2,500, and offered to pay said sum on return of said bonds, and demanded the same, which the plaintiff then

neglected and refused to deliver, whereby the defendants are damaged in the sum of $5,000, for which they ask judgment.

To this cross demand the plaintiff demurred, and the cause coming on for hearing on the several demurrers, the court overruled the defendants' demurrer to the petition, and sustained plaintiff's demurrer to the cross demand. Defendants appeal and assign these rulings as error.

*Goode & St. John* for the appellants.

*Barcroft & Gatch* for the appellee.

MILLER, J.— I. We will first dispose of the questions involved in the ruling on the demurrer to the petition.

1. The bonds described in the petition are personal property. This has been the holding of nearly all
I. BONDS: of municipal corporations. the cases in which the question has been made; and being evidences of debt, they are in Iowa declared to be personal property, by express statutory provision, as follows: " The words 'personal property' include money, goods, chattels, *evidences of debt*, and *things in action*." Rev., subd. 9 of § 29.

2. This class of securities, by the form in which they are issued and the mode of giving them circulation, being negotiable by delivery, and bought and sold in the money and stock markets of the country, are held by an almost unanimous current of adjudications to be a class of negotiable securities. *White* v. *Vermont & Mass. R. Co.*, 21 How. 575; *Delafield* v. *State of Illinois*, 2 Hill, 160; *Morris Canal Co.* v. *Fisher*, 1 Stoct. 667; *Carr* v. *Le Fever*, 27 Penn. 413; *Craig* v. *The City of Vicksburg*, 31 Miss. 216; *Mercer Co.* v. *Hackett*, 1 Wall. (U. S.) 95; *Commissioners of Knox County* v. *Aspinwall*, 21 How. (U. S.) 539; *Gelpcke* v. *City of Dubuque*, 1 Wall. (U. S.) 175; *Dunham* v. *Cin., Peru, etc., R. Co.*, id. 254; *Myer*

v. *City of Muscatine*, id. 334, and many other cases that could be cited.

3. These securities, as we have seen, are under the law personal property, and the transactions stated in the peti-

*2. WARRANTY: in sale of city bonds.* tion of plaintiff show a sale of this species of property by the defendants to the plaintiff. The same rules of law, therefore, which are applicable to sales of other kinds of personal property, under like circumstances, must be applied in this case. It was a sale of personal property with what is claimed amounted to a warranty of the quality or value of the article sold. Do the facts alleged constitute a warranty? We are of opinion that they do. In order to constitute a warranty it is not essential that the word "warrant" be used. Any distinct assertion or affirmation of quality made by the seller during a negotiation for a sale of chattels, which it may be supposed was intended to effectuate the sale, and was operative in effecting it, will constitute a warranty. *Hughes* v. *Funston & Smith*, 23 Iowa, 257; 1 Parsons on Cont. 579, 580, and authorities there cited. Nor is it essential that any other word of precisely the same meaning as "warrant" should be used. It is enough if the words actually used import an undertaking on the part of the owner that the chattel is what he represents it to be. 1 Parsons on Contracts, *supra*. Such an undertaking when made and relied on by the purchaser is as much a warranty as if the term "warrant" itself had been used. The plaintiff here avers that, in the sale of the bonds described in the petition, "*the defendants agreed that the principal and interest of the bonds was or should be guaranteed and provided for by a sinking fund set aside for that purpose*" *by the obligor in the bond*, the City of Memphis; "that such representations and agreement for the securing of said bonds was a material part of the contract," etc. Here is an express agreement alleged, that the bonds should be or were secured by an adequate fund for

the ultimate payment thereof, both principal and interest. This is as much a warranty as if the language had been: " we *warrant* that such a fund shall be provided." The allegation is to the effect that the defendants undertook that the bonds were or should be secured in a particular manner, and, consequently, of greater value than unsecured bonds.

II. But it is insisted that, as the plaintiff accepted the bonds, such acceptance was a waiver of the warranty, and a satisfaction of the contract. The law is well settled that, in sales of personal property with warranty, the purchaser may retain the goods and bring his action for damages on a breach of warranty. 1 Parsons on Cont. (5th ed.) 591, 592, and note *k;* Sedgwick on Meas. of Dam. 319, and cases cited. Some of the cases hold that the vendee may, at his election, bring his action at once on the warranty; or he may return the goods forthwith and sue for the price if he has paid it. *Fielding* v. *Starkin,* 1 H. Black. 17; *Kellogg* v. *Denslow,* 14 Conn. 411; *Waring* v. *Mason,* 18 Wend. 425; *Thompson* v. *Botts,* 8 Mo. 710; *Borekins* v. *Bevan,* 3 Rawle, 23; *Carter* v. *Stennel,* 10 B. Monr. 250; *Milton* v. *Rowland,* 11 Ala. 732; *Ferguson* v. *Oliver,* 8 Smeed. and Marsh. 332; *Franklin* v. *Long,* 7 Gill. and Johns. 407. While others hold, and Mr. Sedgwick says, that "the better opinion seems now to be, that where there is no *fraud* and no *agreement* to return, the vendee cannot at his option rescind the contract, but has only his action on the warranty. Sedgwick on Meas. of Dam. 319; *Voorhees* v. *Earl,* 2 Hill, 288; *West* v. *Cutting,* 19 Vt. 536; *Thornton* v. *Wynn,* 12 Wheat. 183. All the authorities agreeing, however, that the vendee may retain the goods and bring his action on the warranty.

The authorities cited by appellant in support of his position apply to mere executory contracts where the chattels may generally be returned as soon as they are found not to satisfy the contract, and have no application to the

4.— acceptance of property.

case before us, which is a completed sale with warranty, and not such as that the property could have been returned immediately or rejected, for the alleged agreement of defendants was not that the bonds on their face should show that they were secured by a special fund. The bonds on their face did not notify the plaintiff of any non-compliance by defendants with their agreement that the bonds should be secured by a special fund for their payment, and an acceptance of the bonds was no waiver of the alleged breach of warranty.

III. The plaintiff claims as damages the difference between the market value of bonds, such as were in fact delivered, and the market value of bonds secured by a special fund for their payment, in accordance with defendant's warranty.

5.——measure of damages.

He says the bonds would, in the market, have been worth one hundred cents on the nominal dollar thereof, if the defendants had kept their agreement good; that the bonds actually delivered are only worth half that sum in the market, and he asks a judgment for the difference, with interest.

While there has been great fluctuations of judicial opinion on the question of the measure of damages in cases of breach of warranty in the sale of personal property, Mr. Sedgwick states, as the result of the cases, that "the true measure of damages is the difference between the value which the thing sold would have had at the time of the sale, if it had been sound or corresponding with the warranty, and its actual value with the defect." Sedg. on Meas. of Dam. 324. See also in support of this rule, *Van Allen* v. *Ill. Central R. Co.*, 7 Bosw. 515; *Simpkins* v. *Low*, 49 Barb. 382; *Cary* v. *Gruman*, 4 Hill, 625; *Comstock* v. *Hutchinson*, 10 Barb. 211; *Thornton* v. *Thompson*, 4 Gratt. 121; *Woodward* v. *Thacher*, 21 Vt. 580; *Marshall* v. *Wood*, 16 Ala. 806; *Slaughter* v. *McRae*, 3 La. Ann. 455; *Borrekin* v. *Bevans*, 3 Rawle, 23; *Roberts* v. *Carter*, 28 Barb. 462. There are many other

cases holding the same rule, while some of the earlier cases hold the measure of damages to be the difference between the *price paid*, or to be paid, and the real value.

The rule, as stated by Mr. Sedgwick, and contended for by the plaintiff, has been adopted by this court. In *Hahn* v. *Cummings*, 3 Iowa, 583, the defendant pointed out and pretended to sell plaintiff one tract of land, and fraudulently conveyed to him another, and it was held that the measure of damages was the difference between the two pieces of land. In *Lacy* v. *Straughan*, 11 Iowa, 258, which was an action upon a breach of warranty of the soundness of a horse, the measure of damages was held to be the difference between the value of the horse answering the warranted character and its value at the sale in the condition in which he really was. *Likes* v. *Baer*, 8 Iowa, 368 ; *Gates* v. *Reynolds*, 13 id. 1 ; and *Morberly* v. *Alexander*, 19 id. 162, affirms the rule laid down in *Hahn* v. *Cummings, supra*.

IV. As to the ruling of the court below, sustaining plaintiff's demurrer to defendant's cross demand, we are of opinion that it was correct. While the 6.——commercial paper. measure of damages for the wrongful conversion of negotiable paper is *prima facie* the sum recoverable thereon, yet the real or market value may be shown by showing the insolvency of the maker or obligor, and the measure of damages will then not exceed such real or market value. *Potter* v. *Merchants' Bank*, 28 N. Y. 655. In the case before us, the defendants show by their pleading that the bonds alleged to have been wrongfully withheld by plaintiff are only worth in the market fifty per centum of their nominal value, and that they have received that amount from the plaintiff therefor. From the showing of their pleading they have not suffered any injury, and, consequently, have no right to recover damages.

The judgment of the court below is

Affirmed.