JACK & TONER v. THE D. M. & FT. D. R. CO. ET AL.

1. **Sale:** WARRANTY: WHAT CONSTITUTES. An agreement by the seller that certain wheat to be delivered should be "good milling wheat" was held to constitute a warranty as to the quality.

                                                                                53  399,
        86  547
        53  399
      101  296

2. ——: ——: BREACH OF. Where there is a breach of warranty as to the quality of an article contracted for, the purchaser may refuse to receive it, and treat the contract as rescinded.

3. ——: CONTRACT: FREIGHT. Where by the terms of a contract for the sale of grain the purchaser was to pay the freight thereon, and did so pay it, but refused to receive the grain, and the contract was rescinded, it was held that he could not recover the amount paid for freight from the carrier.

### Appeal from Polk Circuit Court.

### THURSDAY, APRIL 22.

ACTION AT LAW. The cause was tried to a jury, and upon special findings a judgment was rendered for plaintiffs. Defendants appeal. The facts of the case involved in the questions decided by the court appear in the opinion.

*Berryhill & Henry*, for appellants.

*Clark & Connor*, for appellees.

BECK, J.—I. The original petition made the Des Moines & Fort Dodge Railroad Company alone a defendant, and alleged that plaintiffs purchased a car load of wheat of Kenworthy & Deaton, of Dallas Center, and paid them thereon $159.45, leaving a balance due of $233. Kenworthy & Deaton delivered the wheat to the railroad company for transportation to Des Moines. The grain was brought in a car to Des Moines, and plaintiffs paid the freight to the railroad company, but it refused to deliver them the wheat or permit them to remove it. They ask to recover against the railroad company the value of the wheat at $1.00 per bushel, and the amount paid for the freight.

The defendant answering the petition admits that the wheat was transported by it, and the freight paid by plaintiffs, but avers that it was notified by Kenworthy & Deaton, the consignors, not to deliver the grain to plaintiffs until the balance due thereon should be paid.

Kenworthy & Deaton intervene in the action, and allege that the wheat was sold to plaintiffs at the price of $1.20 per bushel, plaintiffs to pay the freight; that they demanded payment, and upon failure of plaintiffs to comply with the demand the intervenors directed the railroad company to hold the grain. The plaintiffs refusing still to make payment for the wheat, the intervenors caused it to be sold, after notifying plaintiffs, and applied the proceeds on the claim against plaintiffs. A balance is due them they allege, and they ask judgment therefor.

In an amended petition plaintiffs allege that the intervenors agreed to furnish good "No. 2" wheat at the price of $1.20 per bushel, the freight to be paid by them; that the wheat upon inspection after it reached Des Moines proved to be of a lower grade, and for that reason they refused to pay for it at the contract price. Plaintiffs in the amended petition waive their claim for the value of the wheat, and ask judgment for their damages, being the amount paid by them to the intervenors and the railroad company. Substantially the same allegations are made in the answer to the petition of the intervenors, and a like judgment is asked against them. The court directed the jury to return special findings upon questions submitted to them, which with the answers are as follows:

"1. Did Kenworthy & Deaton agree that the wheat sold Jack & Toner should be "No. 2" wheat? A. No.

"2. Did Kenworthy & Deaton agree that the wheat sold Jack & Toner should be good milling wheat? A. Yes.

"3. Did Kenworthy & Deaton agree that the wheat sold Jack & Toner should be of any particular quality? A. Yes.

"4. Did Jack examine the wheat in question before he

purchased the same, or did he purchase the same upon his own judgment?   A.  No.

" 5.  Did Kenworthy & Deaton make any representations as to the quality of the wheat at the time they sold the same to Jack & Toner?   A.  Yes.

" 6.  Was any credit to be given Jack & Toner by Kenworthy & Deaton upon the purchase of said wheat?   A.  No.

" 7.  Did Jack & Toner pay the freight on the wheat to the railroad company, and if so, how much did they pay? A.  Yes.  $18.33."

Thereupon plaintiffs amended their petition alleging that the intervenors sold and agreed to deliver to them "good milling wheat," that the wheat was not of that quality, and that plaintiffs refused to receive it as such on the contract, and notified Kenworthy & Deaton to that effect.   The amendment also alleges the payment of a part of the purchase-money for the wheat and the freight as alleged in the original petition.  Judgment is asked against the railroad company and the intervenors.  No objections were made in the court below or in this court to the pleadings.

Counsel insist that the findings of the jury, to the effect that Kenworthy & Deaton agreed that the grain sold was " good milling wheat," are not supported by the testimony. Upon this point there was conflict; it cannot be pretended that the findings of the jury are wholly without testimony; they must, therefore, stand.

III.   It is next urged that the "findings are contrary to law," in that they do not show a warranty of the quality of 
1. SALE: warranty: what constitutes.
the wheat.  The findings are to the effect that the wheat sold was good milling wheat—that Kenworthy & Deaton agreed it should be of that quality. This was the fact found by the jury; it cannot be said that their findings were " contrary to the law. "   It may, however, be claimed that the court, in holding upon the facts found that a warranty was established, did not truly apply the law. We may understand the counsel's objection as directed rather

to the ruling of the court upon the findings than to the findings themselves, and that they insist the court erred in holding that a contract of warranty is shown by the special findings; but upon this question there can be no doubt. The second finding is to the effect that Kenworthy & Deaton agreed that the grain sold should be "good milling wheat," thus clearly expressing a contract that the wheat should be of the quality indicated. It is not necessary that the word "warrant" should be used in a contract to raise a warranty. *Callanan v. Brown*, 31 Iowa, 333. The facts found by the jury authorize the conclusion that Kenworthy & Deaton warranted the quality of the wheat.

IV. A motion for a new trial, based upon newly discovered evidence, was overruled. It was supported by the affidavit of one of the intervenors, Deaton, showing that one of the plaintiffs at the time of the purchase informed him that he had purchased of Kenworthy a car load of wheat, and that it would not grade "No. 3." The trial occurred more than two years after the sale. It is not shown that in the exercise of diligence the testimony could not have been produced at the trial. Indeed, as the testimony proposed to be introduced upon the new trial was of one of the parties to the action, we will presume, in the absence of the clearest showing, that the omission to introduce the evidence was through his own negligence. A new trial, therefore, was properly refused.

V. Counsel for defendants insist that the court below erred in holding that plaintiffs, upon the breach of the warranty of the quality of the wheat, could refuse to accept the grain, treat the contract as rescinded and recover the money paid thereon. This ruling is in accord with the settled doctrine of this court. *Rogers v. Hanson & Co.*, 35 Iowa, 283. Our prior decision upon this question counsel vigorously assail. Our confidence in its correctness is not shaken. It is unnecessary to consider the objections made to it, or support it by argument.

2. —— : —— : breach of.

VI. The Circuit Court rendered judgment against the railroad company for the amount of the freight and interest thereon, paid by plaintiffs. We can discover no ground upon which this judgment can be supported. The freight was a part of the purchase-money for the wheat; it was paid to the railroad company for and on account of Kenworthy & Deaton. These parties allege in their petition of intervention that they were to deliver the wheat at Des Moines. It is not denied that plaintiffs were to pay the freight. The railroad company was no party to the contract of sale; it was authorized to collect the freight from either party; plaintiff paid it under the contract. The intervenors would have been liable to the railroad company had the payment not been made by plaintiffs, or the railroad company could have enforced their claim for freight against the wheat itself. In either case the intervenors, directly or indirectly, would have been compelled to pay the freight. The plaintiffs paid it for the intervenors, and they are liable therefor to plaintiffs. The judgment against the railroad company will be reversed, and judgment will be entered against the intervenors, Kenworthy & Deaton, for the freight as well as for the amount paid to them for the wheat. If the plaintiffs so elect they may have judgment in this court, otherwise the cause will be remanded for judgment in harmony with this opinion. Kenworthy & Deaton will pay the costs of this appeal.

<div style="margin-left:2em;">3. ——: contract: freight.</div>

MODIFIED AND AFFIRMED.