101  289
106  446

## The Eagle Iron Works v. The Des Moines Suburban Railway Company, *et al.*

**Sale.**  A provision in a contract for the purchase of boilers to be manufactured, that all work done and material furnished shall be of the very best material, and strictly comply with the specifications, and that the general manager of the purchaser, or his representative, shall have the right to inspect during the progress of the work, and that any work done and material furnished not in accord with the specifications, shall be subject to immediate correction or rejection, constitutes a warranty as to the material and workmanship.

**Executory warranty.**  Such a warranty would take effect upon the delivery and acceptance of property which was not in existence when the order for it was accepted, though a test is permitted prior to acceptance.

**Right of inspection.**  The permissive right of inspection during the process of manufacture of goods, given to the one ordering the same, and his failure to make such inspection, does not relieve the seller of the obligation to furnish goods of the quality provided for in the contract

**Implied warranty.**  No warranty of a boiler, is implied, in particulars which could be proved in a hyrostatic test, by a contract providing, that when it is set-up, it will be subject to such a test, to be made by the contractor, at his expense, the water for the test to be supplied by the purchaser.

**Measure of damages for breach.**  Where a warranted article has been used and altered by the buyer, the measure of damages upon breach is not the difference between the value of the article as it should have been and its value at the time of trial of the action brought by warrantee.  At most, damages should be measured as of time of delivery.

**Same.**  A seller of boilers, under a warranty, that the material and workmanship shall be of the very best kind, cannot complain that the purchaser is allowed the amount required to re-rivet the boilers, where some of the riveting is defective, and the amount thereof is not shown.

**Evidence:** *Damages.*  The fact that the seller resold the article, does not preclude his recovery for a breach of warranty as to quality, in the absence of evidence that he received for the article, as much as he paid for it.

RESCISSION: *Waiver.* Where the buyer of an article, with warranty as to quality, relied, for over seven months after learning that the warranty had been broken, on a recoupment of damages, and the seller sued for the price upon that claim being made, the buyer can not rescind because of the breach.

**Mechanic's Lien:** JOINDER OF CAUSES: *Assuming Debts.* Where a buyer of personalty attached it to the realty and sold the latter to one who assumed his debts, a complaint against the two, by the seller of the personalty, to foreclose a mechanic's lien, did not contain two causes of action, in violation of Code, section 2510, because it sought to recover against the purchaser of the realty on account of his having assumed the debt.

RIGHTS OF PRIOR MORTGAGEE: *Decree.* The holder of a mortgage could not object, on foreclosure of a mechanic's lien, that the sale was decreed subject to the lien of the mortgage, merely, without providing for an apportionment of the proceeds pursuant to McClain's Code, section 3317, which enables a mechanic's lien claimant to secure the advantage of the increase in value of the realty, resulting from the improvement.

*Appeal from Polk District Court.*—HON. S. F. BALLIET, Judge.

WEDNESDAY, FEBRUARY, 10, 1897.

THE defendants are, besides the Des Moines Suburban Railway Company, named above, the Des Moines City Railway Company, the Iowa Loan & Trust Company, and the American Trust & Savings Bank. In March, 1893, the plaintiff, contracted with the Des Moines Suburban Railway Company to furnish and place in position for it, on certain lots in the city of Des Moines, four boilers, of specified dimensions, for the agreed price of three thousand eight hundred and nineteen dollars. The boilers were placed in position, and, because of work and material furnished by plaintiff under the contract, plaintiff claims the further sum of three hundred and seven dollars and seventy-seven cents, on which there is a cash credit of two hundred dollars, making plaintiff's claim aggregate three thousand, nine hundred and twenty-six

dollars and seventy-seven cents. It appears from the petition that there were contracts both written and oral, and that plaintiff complied therewith. The written contract is made an exhibit thereto. The petition shows that thereafter, on July 25, 1893, the Des Moines Suburban Railway Company conveyed the lots on which said boilers were placed to the Des Moines City Railway Company, and that said company assumed the payment of the floating indebtedness of the Suburban Railway Company. The petition asks judgment against both of said companies, and further shows that a mechanic's lien was effected, and asks that the lien be established. As to the Iowa Loan & Trust Company and the American Trust & Savings Bank, the plaintiff asks that its lien may be decreed superior to any claimed by them. The Des Moines Suburban Railway Company answered, admitting the contract to furnish the boilers, and admitting the furnishing of the work and materials, with slight exceptions. The answer denies that plaintiff complied with the terms of the contract in furnishing the boilers, and shows numerous particulars in which there was a failure to do so. It expressly states that by reason of such failures, the boilers are practically worthless, and are not such boilers as were contemplated by the contract, because of which it refused, and still refuses to accept them. It further appears from said answer that said company did not become fully advised as to the defects in said boilers, until about the twentieth day of March, 1894, at which time it elected not to receive the boilers. The company further asks that, if it is not entitled to a rescission of the contract of sale, it should be allowed, as damages, substantially the purchase price of the boilers. Some other matters are pleaded, which need not be stated here. If important, they may be noticed in the opinion. The Des Moines City Railway Company adopted as its own

the answer of the Des Moines Suburban Railway Company, and also pleaded that it assumed the payment of such debts, only, of the Suburban Company, as should be audited as correct and allowed by the directors of the Suburban Company. The pleadings of the other defendants will be noticed hereafter, if it shall become important. The plaintiff filed a reply, from which it appears that the boilers were tendered to the company on the fifth of June, 1893, and that on or about the fourteenth of that month a test was made of the boilers, and that, as to all matters and particulars as to which defects and failures are now claimed, the defendant company had full knowledge, and with such knowledge it accepted said boilers. Plaintiff admits that in some respects, as to materials furnished, there was not a compliance with the terms of the contract, but says that, as to such materials, they were furnished with the knowledge of, and were accepted by, the company, and that in all such respects objections were waived. A slight mistake in plaintiff's statement of account, because of some plates charged for, was conceded. The district court found a defect in the riveting of the boilers, and allowed the defendants, as damages therefor, one thousand three hundred and sixty dollars, and gave judgment for plaintiff against the Des Moines Suburban Railway Company and the Des Moines City Railway Company for two thousand five hundred and fifty-two dollars and eighty-five cents, and established the mechanic's lien, subject to the lien of the Iowa Loan & Trust Company. Both parties appealed. —*Affirmed.*

*Bishop, Bowen & Fleming* for plaintiff.

*Guernsey & Baily* for defendants.

GRANGER, J.—I. The presentation of the case makes it necessary for us to determine whether the contract of sale involves a warranty. A few preliminary facts may well be stated here. The contract was made March 7, 1893. The boilers were to be delivered in sixty days from that date, and payment was to be made sixty days from shipment. The plaintiff is a corporation in the city of Des Moines, Iowa. The boilers were made in Pennsylvania, by the Pennsylvania Iron Works, and shipped to Des Moines. They were subjected to a hydrostatic test after reaching Des Moines, before being "bricked up." The hydrostatic test was made in June, 1893, and the boilers were afterwards bricked up for use. The last of July, 1893, the Suburban Company conveyed the lots on which the boilers were located, including the boilers, to the Des Moines City Railway Company. The boilers were used by the City Railway Company, more or less, to January, 1894. This suit was commenced August 24, 1893. A fact claimed by defendants is that it first learned that the boilers were practically worthless about March 21, 1894, at which time the Suburban Company tendered them back to the plaintiff. This tender occurred during the trial of the case in the district court. In order to approach the question of a warranty in the contract of sale, untrammeled by questions of fact, we may say that it appears to us that if the boilers were warranted to conform to the agreement as to quality of workmanship and material, there was such a breach as would have justified a rescission of the contract, by an observance of legal requirements for that purpose. We next look to the contract, to determine its legal import as to a warranty. The following is the essential part for that purpose. It commences: "Gentlemen: We propose to furnish you four horizontal tubular boilers."

Then follow specifications as to strength, domes, riveting, boiler heads, seams, flues, etc., and it concludes as follows: "The boiler, when set up at power house of company, ready for brick-work, will be subject to a hydrostatic test of not less than 150 pounds per square inch; such test to be made by the contractor, at his expense, and in the presence of the general manager or his representatives; the water for test to be supplied by purchaser. All work done and material furnished to be of the very best quality of their respective kinds, and to strictly comply with the specification; and the general manager or his representatives shall have, at any reasonable hour, the right to inspect the work during its progress; and any work done or material furnished, not being in accord with the specifications, shall be subject to immediate correction or rejection." The right of inspection during the process of manufacture was permissive only, and the fact that it was not used would not relieve the plaintiff of its obligation to furnish boilers of the quality, both as to material and workmanship, contemplated by the contract. It was understood that the boilers were to be manufactured after the contract was made, and the undertaking of plaintiff was to procure and deliver boilers of the kind described in the contract. The contract provides for a test, but it is evident that the test, if successful, would not settle in plaintiff's favor all the requirements of the contract. The hyrdostatic test might be met with material and workmanship not of the kind required by the contract; so that, even though the prescribed test was met, the company could have rejected the boilers for defects as to workmanship or materials. It will be seen that the contract provides how and when the sufficiency of the contract, in certain particulars, is to be settled,—

that is, those that would be proven by the hydrostatic test; and it seems to us that, as to such particulars, the language of the contract would not imply a warranty. The acceptance after the test would, as to such particulars, conclude the purchase.

As to the materials and workmanship, the parties have employed different language, and have not seen fit to be as specific as to time and place, or the manner of settling the facts. We conclude, from the tenor of plaintiff's argument, that had these boilers, at the time of the contract of sale, been ready for delivery, and been delivered, with the same statement as to the quality of material and workmanship, and been accepted relying thereon, unless the facts appeared otherwise, it would have been a warranty. Plaintiff, however, contends that as this was an executory contract, the rule is different. It relies on *Forcheimer v. Stewart*, 65 Iowa, 593 (22 N. W. Rep. 886). In that case it is held that a sale of hams was with a warranty. That, too, was an executory sale, and the warranty was made to depend on the words, as to kind and quality, inducing the sale, and the fact that there was no opportunity for inspection. In this case it is said that there was that opportunity at the time the test was made. In the cited case the language relied on is used argumentatively, and we do not understand it to hold that a warranty may not as well be created in case of an executory as of an executed sale. The language of that case, relied on, is as follows: "The case differs in no essential respect from one where the buyer makes an order for goods of a certain kind and quality, and the seller accepts the order. The obligation of the seller is to execute the contract upon his part by a selection and delivery of the goods of the kind and quality contracted for." A careful study of the language precludes the idea of a purpose to hold that a sale of the kind

referred to may not involve a warranty, the same as if the sale was executed; that is, that a warranty attaches as well after delivery, in an executory sale, as where the delivery is at the time of the sale, other facts being the same. The words, "Such a contract is not, in the outset, a sale with a warranty; it is executory," should not be misunderstood. The words "in the outset" are a limitation on what might otherwise be the meaning, and show the thought to be that the warranty attaches, or may attach, when the contract is executed, while, as to a completed sale, it attaches at once. This thought further appears from the language immediately following: "It becomes an executed sale on delivery." Then follows language showing conditions under which the warranty would arise, and the mistake is in assuming a negative conclusion,—that it would not arise under other conditions. In cases of implied warranty, the rule of plaintiff's contention has support on authority. See Biddle, War., 14. Our conclusion is that, as to the warranty arising from the language of the contract, the situation is not different from what it would have been had the boilers been present, and the test made, and the boilers delivered the day the contract was executed. In other words, the executory feature of the contract does not change the rule. That the language of the contract might amount to a warranty, is well established in this state, as well as being a general and well-settled rule of law. See *Hughes v. Funston*, 23 Iowa, 257; *Callanan v. Brown*, 31 Iowa, 333; *Stevens v. Bradley*, 89 Iowa, 174 (56 N. W. Rep. 429); *Latham v. Shipley*, 86 Iowa, 543 (53 N. W. Rep. 342); *Jack v. Railway Co.*, 53 Iowa, 399 (5 N. W. Rep. 537). There is no doubt of the contention of the defendants, that in cases of warranty the right of rescission exists, if properly exercised. See *Rogers v. Hanson*, 35 Iowa, 283.

II.   Having determined that there was a warranty by the terms of the contract, we may notice defendants' rights thereunder.   Defendants insist on the right of rescission.   Some facts are important in this connection.   One claim made by the Surburban Company, is that it refused, and still refuses, to receive the boilers.   That claim is not sustained by the record.   There was an unmistakable acceptance in June, after the test, and the boilers were set.   In July, it sold the boilers, with the lots on which they were placed; and we are not disposed to devote time to a proposition that is so plain.   Before, and at the time of the acceptance, many of the defects as to materials, and some as to the workmanship, were known to the company; and, as we have said, it would then have had the right to rescind the contract, and not receive the boilers.   As to such matters, when the boilers were accepted, the right of rescission was lost.   The petition in this case was filed August 24, 1893.   On the seventh of the same month, the following letter was written by the president of the Suburban Company: "Des Moines Suburban Railway Company.   Des Moines, Iowa, Aug. 7, 1893.   Eagle Iron Works, City.   Gentlemen: In reply to your request for payment for boilers now being erected in our power house, would say that you have not complied with *your* contract with reference to said work, in various particulars.   The boilers were not delivered at the time contracted for, nor were they constructed in strict accordance with the plans and specifications as provided by the contract, either as to quality of material or workmanship.   We have been very seriously delayed in our work, and damaged, by reason of your failure to comply with your contract, and must insist on these damages being adjusted, before the entire contract price is paid.   Yours most obd't, [Signed] D. M. Suburban

Railway Co., by G. B. Hippee, Pres." The substituted answer, in which the right of rescission is claimed, was filed March 21, 1894, during the trial. It appears that just before that time, and during the trial, the defendants secured experts to examine the boilers, and some of the rivets were taken out, and the full extent of the defects was not known before that time. It is, however, claimed by defendants that the boilers were not used after January 3, 1894, and not regularly before that. On the twenty-ninth of December, because of the defective riveting, the boilers, or one of them, was discovered to be leaking. From the seventh of August, 1893, to March, 1894, with knowledge that the boilers did not comply with the warranty, the Suburban Company was relying on a recoupment of damages, instead of a rescission, and this suit was commenced under a claim or statement by the company that damages would be sought. We do not think, under such a state of facts, that a rescission should be allowed. The defects as to the boilers are largely magnified. Athough some of the witnesses say the boilers are worthless, the evidence does not show the fact. It seems to us that, had the riveting been as the contract required, there would have been no substantial grounds of complaint, barring such departures from the contract as were known at the time of, and waived by, the acceptance of the boilers.

III. There was, without any doubt, a breach of warranty. The amount of recovery, because of it, cannot be settled, likely, with exact precision. The court below allowed for the defective riveting one thousand three hundred and sixty dollars. The allowance is based on what the testimony shows would be the cost of re-riveting the boilers and removing and replacing the brickwork. Thus repaired, we think all damage of which the defendants can now complain would be avoided. Defendants urge that

such an amount is not the true measure; that it should be the difference between the value of the boilers as they were to be, and as they actually were. That rule would not obtain with the boilers in the condition they are after the use of them, and the changes that have been made by taking out the rivets, as shown by the testimony. The rule urged, if applied, should be the difference in values at the time the boilers were delivered; and we think the allowance gives that, as well as making good the loss resulting from the brickwork. Of this defendants should not complain. On the other hand, plaintiff urges that the loss was but trifling, as but a few rivets, out of some two thousand four hundred, were found defective. It is true that it is difficult to determine just the extent of the damage because of the bad riveting. For this uncertainty the plaintiff is at fault, as there is a plain breach of the warranty. The court took what appears to be the minimum amount as shown by the evidence to certainly make the boilers good, and of that it ought not to complain. There is a further claim by the plaintiff that there can be no recoupment of damages, because of the sale to the City Railway Company. It is said that there is no proof that the Suburban Company did not receive a full and adequate price for the boilers. That is true, but a full and adequate price would be their actual value. We know of no rule of presumptions to warrant a conclusion that the contract price at the date of purchase would be the price at which they were sold. It would be an unjust rule to permit the plaintiff, after its breach of the contract of sale, to reap such an advantage.

IV. The defendants moved the court to strike from the petition the cause of action as to the Des Moines City Railway Company, for the reason that

there is a misjoinder of causes of action, which motion the court denied. The claim in support of the motion is based on Code, section 2510, as follows: "The action for mechanic's lien shall be prosecuted by equitable proceedings, and therewith shall no other cause of action be joined." We do not think that there is a joinder of any other cause of action. There is only the cause of action to enforce' the mechanic's lien. The property to which the lien attached had been transferred to the City Railway Company, and it became, because of that fact, a necessary party to the foreclosure of the lien. The mere fact of the claim to recover because of the assumption of the debt by the City Railway Company, in its purchase of the property, does not make another cause of action, within the meaning of the section. The cause of action is that arising on the contract, out of which springs the mechanic's lien. There is but the single cause of action in the case. The assumption of the debt is but a fact to show the liability of the City Railway Company on the contract, which is the basis of the suit.

V.  The district court, in establishing the lien, simply made it "subject to the lien of the Iowa Loan & Trust Company." It is said by defendants that the decree should have provided that the property be sold, and the proceeds applied first to the payment of the bonds of the loan and trust company, and then to the mechanic's lien; and reliance is placed on section 3317 of McClain's Code, a part of which is as follows: "If the material furnished or labor performed was for additions to, repairs of, or the betterments upon buildings, erections or other improvements, the court shall take an account of the values before such material was furnished or labor performed, and the enhanced value caused by such additions, repairs, or betterments, and upon the sale .

of the premises, distribute the proceeds of sale so as to
secure to the prior mortgage or lien priority upon the
land and improvements as they existed prior to the
attaching of the mechanic's lien, and to the mechan-
ic's lien priority upon the enhanced value caused by
such additions, repairs or betterments. In case the
premises do not sell for more than sufficient to pay off
the prior mortgage or other lien, the proceeds shall be
applied on the prior mortgage or other lien." We do
not think the loan company has a right to insist upon
such a decree. The law is designed, in a case where
such additions, betterments, or repairs are made, to
enable the laborer or material furnisher to secure the
advantage of the added value because of the labor or
material furnished; but it is not the design of the law,
in such a case, to require that the sale shall be with a
view of satisfying all liens in the order of their
priority under the decree. Just when such a decree
should be entered we need not now determine,
and we should not, because of the many interests to
be affected by it; but it is safe to say, in view of the
fact, that the amount of the loan company's lien, is
not in issue, nor determined, and that the decree, as
entered, can in no way prejudice the loan company,
that the decree of the district court, in this respect,
should not be disturbed. As the decree stands, any
sale made under it, must be subject to the lien of the
loan company, so that its security will stand as to the
property, including the improvements in question.
The rule contended for could give it no more. The
decree, as it stands, gives to the plaintiff the right of
sale, subject to the rights of the loan company. Of that,
the company should not complain. It is thought that
*Bank v. Schloth,* 59 Iowa, 316 (13 N. W. Rep. 314), and
*Fletcher v. Kelly,* 88 Iowa, 475 (55 N. W. Rep. 474), hold
to a different rule, but they do not. The cases deter-
mine no such question as is here involved. They

fix the right of lienholders, and it is expressed that the mechanic's lienholders, under the facts of the case (*Fletcher v. Kelly*), are only entitled to the balance remaining after a sale of the property on the plaintiff's claim, and the satisfaction of their debt. That is the rule, but the language only fixes the rights of the parties, and does not go to the question of the procedure to effect such rights. In many cases, the procedure claimed would be the correct one. The decree in this case, fixes the rights of the parties under that rule. It permits a sale of the property by the plaintiff as a junior lienholder, but the sale is subject to the loan company's lien; so that, in effect, the property stands first for the payment of that lien. The amount paid on plaintiff's sale will be, presumably, the value of the property above the amount necessary to pay off prior liens, or, in other words, the purchaser will reserve, of its value, sufficient to pay the prior lien. The judgment of the district court, on both appeals, will stand AFFIRMED.