SUTHERLAND, RESPONDENT, *v.* GREEN ET AL., APPELLANTS.

(No. 3,311.)

(Submitted April 30, 1914. Decided July 11, 1914.)

[142 Pac. 636.]

*Sales—Animals—Stallions — Bills of Sale — Parol Evidence—*
*Remedies—Breach of Warranty—Documentary Evidence—Re-*
*sale—Cause of Action—Waiver.*

Evidence—Contracts in Writing—Parol Evidence—Admissibility.
1. A conversation between buyer and seller had prior to the execu-
tion of a bill of sale with the terms of which it was not in conflict,
and which was material to show the circumstances under which the
writing was executed, *held* admissible in evidence and not open to
the objection that it varied the written agreement.

[As to parol evidence to modify or explain bill of sale, see note
in 19 Ann. Cas. 541.]

Sales—Animals—Breach of Warranty—Remedies.
2. The purchaser of a stallion under a bill of sale warranting that
the animal could be returned and exchanged for another in case the
first failed to meet the warranty, was not restricted to the remedy
provided in the bill but could, upon refusal of the seller to take back
the animal, or failure to offer a substitute acceptable to the buyer,
maintain his action to recover the purchase price.

Same—Written Contracts—Parol Agreement—Evidence—Admissibility.
3. The mere execution of a writing (bill of sale) by one party to a
contract (seller) does not exclude proof of a parol agreement (sale
of an animal) offered by the buyer, the terms of which had been
agreed upon and the purchase price paid before execution of the
bill.

Same—Resale—Breach of Warranty—Waiver of Cause of Action.
4. In the absence of an express waiver, the resale of the animal
referred to above did not waive the cause of action which arose in
favor of the first buyer out of a breach of the warranty under which
it was bought.

Same—Documentary Evidence—Admissibility.
5. A tally sheet required to be kept by the buyer of the stallion
and returned to the seller in the event of dissatisfaction on the part
of the former, *held* admissible in an action to recover the purchase
price, it having been a record made in the regular course of business
for the benefit of defendant.

*Appeal from District Court, Custer County; Sydney Sanner,*
*Judge.*

ACTION by Donald Sutherland against C. W. Green and an-
other, partners as Green & Ingham. Judgment for plaintiff
and defendants appeal from it and an order denying their mo-
tion for a new trial. Affirmed.

Cause submitted on briefs of counsel.

*Messrs. Loud, Collins, Brown, Campbell & Wood,* for Appellants.

The evidence introduced over our objections was incompetent, and anything that was said by either Mr. Sutherland or Mr. Green prior to or at the time of the signing of the bill of sale or agreement is incompetent. We understand the rule to be that: "Parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument." (1 Greenleaf on Evidence, sec. 275.) "It is a well-settled rule of law that, where a written contract is made, oral warranties and implied warranties, and all oral negotiations are merged in the written contract and by its terms the parties must be bound." (*McCormick Harvesting Mach. Co.* v. *Yoeman,* 26 Ind. App. 415, 59 N. E. 1069; *J. I. Case Threshing Mach. Co.* v. *Hall,* 32 Tex. Civ. App. 214, 73 S. W. 835.)

The theory of the court was that this was an action for the recovery of damages for a breach of warranty. Assuming that such is the case, we say that there is no warranty in the bill of sale in question upon which this action can be predicated. The bill of sale by its terms contains all of the agreements of warranty or guaranty made by the appellants in the sale of the stallion, so that the respondent cannot base his action upon any oral or implied warranty. The motion for nonsuit should have been granted, and we are supported in our contention by the following authorities: *Davis* v. *Iverson,* 5 S. D. 295, 58 N. W. 796; *Walters* v. *Akers,* 31 Ky. Law Rep. 259, 101 S. W. 1179; *Dunham* v. *Salmon,* 130 Wis. 164, 109 N. W. 959; *Wisdom* v. *Nichols-Shepherd Co.,* 29 Ky. Law Rep. 1128, 97 S. W. 18; *J. I. Case Threshing Mach. Co.* v. *Hall, supra; Mesnard* v. *Aldridge,* 3 Esp. (Eng.) 271.

Executory contracts may be rescinded by the parties to them only where they continue interested until the attempt to rescind is made. (9 Cyc. 595; *Johnson* v. *Reed,* 9 Mass. 78, 6 Am. Dec. 36.) Assuming, for the sake of the argument, that the bill of sale itself contained a warranty as to the breeding quality of

the stallion in question, then we desire to call the court's attention to another familiar principle of law which is that the warranty is addressed to some particular person and the buyer alone can avail himself thereof, and his assigns or subsequent purchasers cannot avail themselves thereof as against the original seller. (35 Cyc. 370; *Nelson* v. *Armour Packing Co.,* 76 Ark. 352, 6 Ann. Cas. 237, 90 S. W. 288; *Smith* v. *Williams,* 117 Ga. 782, 97 Am. St. Rep. 220, 45 S. E. 394; *Prater* v. *Campbell,* 110 Ky. 23, 22 Ky. Law Rep. 1510; 60 S. W. 918; *Post* v. *Burnham,* 83 Fed. 79, 27 C. C. A. 455.) The rule of law that executory contracts may be rescinded by the parties to them only where they continue interested is by analogy equally applicable to contracts of warranty, particularly in the light of the rule herein last announced, to the effect that a warranty addressed to a particular person can only be availed of by that person.

*Messrs. Geo. W. Farr, H. E. Herrick* and *Frank Hunter,* for Respondent.

HONORABLE GEORGE W. PIERSON, a Judge of the Thirteenth Judicial District, sitting in place of MR. JUSTICE SANNER, disqualified, delivered the opinion of the court.

These appeals are by defendants from a judgment and an order denying their motion for a new trial.

Plaintiff purchased a stallion of defendants at an agreed price of $900. At the time of purchase defendants were copartners, the partnership being dissolved some two days later by mutual agreement. Defendant Green had conducted the negotiations with plaintiff, and under the terms of dissolution was to perform all resulting obligations of the firm. The action was for the recovery of the purchase price.

Plaintiff testified: "I looked this horse over, and wanted to know all about him, if he was a good horse, and he said he had used him in Miles City here the summer previous and if I would come up here he would show me his colts. I talked with Green and told him I wanted the horse for raising colts, for breeding purposes. I told him I had range mares and wanted a stallion

that I could throw in the corral with the mares, and he said this horse was suitable for that purpose; that he had used him in Miles City. There was something said about his being a foal-getter. I purchased the stallion of him that day. * * * Mr. Green gave me the contract or bill of sale that has been intro-duced in evidence here marked 'Defendants' Exhibit 1,' after I paid him for the horse.''

Witness Dan Sutherland testified in behalf of the plaintiff: ''I overheard conversation between Mr. Green and Mr. Suther-land in reference to that horse. Green represented this horse to be a horse that he had stood for one year in Miles City here, the year previous to that, and that his guaranty called for fifty per cent in colts.'' These conversations were had prior to the execution of the bill of sale signed by C. W. Green, agent, which contains the following provisions: ''In the event that the above-named stallion in perfect health, with proper usage, and the mares to him regularly returned, tried and bred on one full service season's trial, does not get with foal fifty per cent of the mares regularly tried and bred to him, then on return of the said stallion to us at Miles City, Montana, during the first week in the month of April next, following the full service season first concluded after the date hereof, in good health and condition, we agree to furnish the above-named purchaser, without further charge, another pure-bred stallion of equal quality, in exchange.''

The instrument provides further for the accurate keeping of a tally sheet, and its return by registered letter not later than July 15, 1910, in the event the conditions are not faithfully per-formed: ''Time being the essence of this contract; or should the above-named stallion hereafter become injured or disabled through accident or disease, this warranty shall be null and void and of no effect, and all obligations incurred by us herein shall be considered fulfilled and ended.'' ''This bill of sale contains all the agreements of warranty or guaranty made by us in the sale of the above-mentioned stallion, and it is expressly pro-vided that we shall not be liable for any claim that may hereafter be made, alleging any verbal agreement of ourselves or agent in the sale of said horse.''

Plaintiff, after breeding the horse to one mare, being dissatisfied with the service, sold him upon the same terms made with defendants, to one Sutton, taking his note for the purchase price of $900, providing the horse should be returned and the note delivered if he failed to get fifty per cent of mares bred, with colt. The tally sheet was kept by Sutton, or under his direction, and mailed to defendants. The stallion proved barren without a single exception. Plaintiff complained of this fact to defendants and offered to return the animal when in good health. It is alleged in the complaint that defendants prevented the return. Some seven days subsequent to the commencement of this action, the stallion died in the possession of plaintiff after return to him by Sutton and the surrender of Sutton's note.

The trial court limited the amount of recovery to the sum of $1,040, this amount being the purchase price with interest at the legal rate from the date of purchase to the day of trial. The other items of damages alleged in the complaint were excluded.

Appellants objected to the admission of the conversation had [1] between plaintiff and defendants prior to the execution of the bill of sale, for the reason that it varied the terms of a written warranty, and now urge the overruling of their objections as error.

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." (Rev. Codes, sec. 5018.)

"A contract in writing takes effect upon its delivery to the party in whose favor it is made, or to his agent." (Sec. 5019.)

"However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." (Sec. 5037.)

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms

of the agreement other than the contents of the writing, except in the following cases: (1) Where a mistake or imperfection of the writing is put in issue by the pleadings. (2) Where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in section 7877, or to explain an intrinsic ambiguity, or to establish illegality or fraud. The term agreement includes deeds and wills as well as contracts between parties." (Sec. 7873.)

"For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret." (Sec. 7877.)

The evidence admitted is not in conflict with the terms of the bill of sale and was material to show the circumstances under which it was made.

In this connection, appellant urges the bill of sale does not [2] contain a warranty that the stallion will get fifty per cent colts and that the warranty is addressed to no one. On failure to get fifty per cent of mares bred, with foal, on return of the horse and submission of proof, defendants agreed to substitute a pure-bred horse of equal quality. The obligation to give value for the purchase price is certain. The method of substitution is uncertain. Under the bill of sale, defendants could not substitute a horse as barren as the first. They were not authorized to question the accuracy of the record.

The minds of the parties had met as to the selection of the first animal. They must meet in the selection of the second, not only upon the fact that a selection is due, but upon the animal to be selected. This condition has not happened because of the fault of defendants in failing to accept the return of the first or offering a substitute acceptable to plaintiff, or offering one which in law he ought to accept. The remedy provided in the bill of sale is not exclusive. (*Nave* v. *Powell*, 52 Ind. App. 496, 96 N. E. 395; *Elwood* v. *McDill*, 105 Iowa, 437, 75 N. W. 340;

*Love & Co.* v. *Ross,* 89 Iowa, 400, 56 N. W. 528; *Fitzpatrick* v. *Osborne & Co.,* 50 Minn. 261, 52 N. W. 861.)

The writer is of the opinion that the evidence of the oral contract is admissible upon another ground. The rule of evidence quoted in the statute is: "When the terms of an agreement have been reduced to writing by the parties. * * * The term agreement includes deeds and wills, as well as contracts between parties." (Sec. 7873, *supra.*) The bill of sale is only signed by the defendant Green. The plaintiff did not join in the writing; neither did he perform any act relying upon it. It was not a moving cause. The only unilateral contracts mentioned in the statute are deeds and wills. The property sold in this instance had been selected; the terms of sale had been agreed upon and the purchase price paid before the defendants executed the writing, which they now say embraces all the terms of sale. It is evident plaintiff did not rely upon this instrument; neither was he induced to make the purchase by reason of it. The mere [3] execution of a writing by one party to the contract does not exclude proof of the parol agreement. (*Carpenter* v. *Hathaway,* 87 Cal. 434, 25 Pac. 549; *Kreuzberger* v. *Wingfield,* 96 Cal. 251, 31 Pac. 109; *Dunham* v. *Salmon,* 130 Wis. 164, 109 N. W. 959.)

Appellants urge that, by reason of the dissolution of the partnership existing between defendants and the subsequent sale of the stallion by plaintiff to Sutton, defendant Ingham is relieved from all liability. Quoting from their brief: "We submit that the retiring partner remains liable for all of the existing debts of the firm to the same extent as if he had not retired." They further urge that, if any warranty could be enforced at all, it [4] must be by the plaintiff and not his vendee. Assuming these two propositions state the law, it is only necessary to inquire whether Sutherland waived his right of action.

The evidence established that the stallion was valueless for any purpose. Plaintiff in making the sale to Sutton received no benefit from the purchase price. The sale was made on like terms obtained from the defendants, providing for the return of

the stallion and delivery of the note received conditionally. The evidence cannot support the conclusion that plaintiff accepted the benefit of the bargain or waived his cause of action against the defendants. The sale of the thing purchased does not waive a cause of action arising out of a breach of warranty. (Mechem on Sales, sec. 1837; *Western Twine Co.* v. *Wright,* 11 S. D. 521, 44 L. R. A. 438, 78 N. W. 942; *Eagle Iron Works* v. *Des Moines S. Ry. Co.,* 101 Iowa, 289, 70 N. W. 193; *Brigg* v. *Hilton,* 99 N. Y. 517, 52 Am. Rep. 63, 3 N. E. 51.)

The tally sheet was material for the purpose of showing the information conveyed by plaintiff to the defendants; being a [5] record made in the regular course of business, and one contemplated by the parties, it was certainly competent. This record was to be made for the benefit of defendants. In passing upon it they were not to apply rules of evidence. On the showing made, the tally sheet was proper evidence. If it was misleading or furnished for the purpose of deceit, that was a matter of defense. The stallion did not get a single foal. The question of percentage was not involved.

The foregoing disposes of the rulings upon the demurrer to the complaint and motions for nonsuit and directed verdict.

The judgment and order are affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Chief Justice Holloway concur.