No. 20.—THE LESSEE OF EZEKIEL VEASEY and others, plaintiffs in error, *vs.* JOHN GRAHAM and others, tenants.

[1.] A deed made by the President, and countersigned by the Cashier of the late Bank of Hawkinsville, is a good conveyance of land.

[2.] The law looks with suspicion upon a contract made between the *trustee and cestui que trust;* and with still more odium upon a purchase made from

himself, as trustee; still, such contracts are not absolutely void, as interdicted by the policy of the law, but voidable only.

[3.] Notice to the cashier of a bank, is notice to the bank itself.

[4.] The purchase of slaves, and the employment of overseers in planting lands, is not such an occupancy as is customary with banks.

Ejectment, in Dougherty Superior Court. Tried before Judge Perkins, November Term, 1854.

In this case, both plaintiffs and defendant claimed under the Bank of Hawkinsville, the land in dispute. The defendants in error offered in evidence a deed to the land, purporting to be made by the Bank of Hawkinsville, dated 4th August, 1842, for the consideration of $2.000, conveying this land to John Rawls. The deed was signed by John Rawls, *President,* and countersigned by George W. Hines, Cashier. It was recorded in 1853. Plaintiffs in error objected to its introduction—

1st. Because Rawls had no authority to make the deed, the charter requiring a board of at least four directors to transact such business; and there was no order on the minutes authorizing this deed to be made.

2d. Because Rawls, as President, held this land as trustee for the stockholders and creditors of the bank, and committed a breach of trust in making this deed; and the deed is, hence, null and void.

3d. Because no corporate seal is attached to the deed.

The Court admitted the deed, and this decision is assigned as error.

It appeared in evidence, that Rawls took possession of the land, and by his agent and negroes, cultivated the same from the date of the deed.

Other errors were assigned, but the decision of the above controlled them.

R. F. Lyon and Scarborough, for plaintiffs in error.

Strozier, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The only question we propose to examine in this case is, was the deed from Rawls, as President of the Hawkinsville Bank to himself good, either as title or color of title, to protect his possession, which, it is conceded, continued for more than seven years?

It was assumed in the argument, that the concurrence of four directors was necessary, by the charter of the Hawkinsville Bank, to convey land. There is no such provision in the charter. By the 3d of the fundamental rules of the constitution of said corporation, it is provided, it is true, that not less than four directors shall constitute a board for the transaction of business. (*Prince*, 107.) But by a subsequent clause in the charter, it is declared that " the bills obligatory and credit notes, and all other contracts whatever, on behalf of said corporation, shall be binding upon the company, provided the same be signed by the president and countersigned or attested by the cashier of the said corporation," &c. (*Prince*, 108.)

This deed, then, in point of form, was sufficient. It is, *prima facie*, a good deed.

[2.] It is contended, however, that the president of the bank could not make a good deed to himself; and therefore, that this deed is, *ipso facto*, void. We do not so understand the law. It looks with suspicion, it is true, upon contracts between trustee and *cestui que trust*. With still more odium upon contracts made by a trustee with himself. Still, such contracts are not absolutely a nullity. Lord *Erskine*, while Chancellor, decided that such deeds were void. But this decision was afterwards over-ruled. See *Hill on Trustees, New Edit*, 159, and the authorities there cited.

Are there not circumstances connected with this case, which go far to relieve it from suspicion? The deed was countersigned by the cashier. That officer is an important functionary in a bank. In most monied institutions, he is pretty much the whole of it. The charter made it his duty to be a party

to all contracts in which the corporation was concerned.    This was required for important purposes; and amongst the rest, to be a check upon the acts of the president.    It may be assumed that the cashier united in this sale—participated in its consummation.    It was his duty to have received the $2.000 purported by this deed to have been paid for the land.    The purchase money was paid or it was not.    If paid, the sale cannot be set aside without, at least, refunding the purchase money or offering to do so.    The receipt of the money and the retention of it, for such a length of time, is such an acquiescence in the sale, as to amount to a confirmation.

But suppose, on the other hand, that the price was not paid, was it not the duty of the cashier to have notified the directors of the fact?    In the absence of all proof then, upon this point, is not the transaction relieved from the suspicion which the law attaches to this class of contracts?

But suppose we are wrong in this view of the case, and that the deed is not good as title, is it not good, as the Circuit Court held it to be, *as color of title?*

The objection to it, in this aspect is, that before the *trustee*, John Rawls, could be permitted to hold this land adversely to the bank, the *cestui que trust*, he must give notice that he had repudiated the trust, and that he occupied the land in his own right.

[3.] The cashier had actual notice of the fact, because he aided in executing the title.    To whom else should notice have been given?    The stockholders, or the directors, or both?    We know of no such practice.

This Court ruled, in the case of the *Bank of St. Marys vs. Monford*, (6 *Ga. R.* 44,) that notice to the cashier was notice to the bank.

[4.] But in addition to this express notice, was not the very nature of the possession, itself, notice of an adverse holding? Was it ever known that a bank bought negroes—employed overseers, to farm lands?    And yet all this was done by John Rawls, from the date of his deed to the trial of the action. Could the bank have been misled or left in doubt, as to the

character of Rawl's occupancy?    For whom and for whose use
and benefit this land was cultivated?