## FLINT RIVER LUMBER COMPANY *v.* SMITH *et al.*

1. The evidence submitted preliminary to the introduction of the certified
copy of the deed was sufficient to authorize the court to find that the
original deed was lost.
2. The deed executed in 1850 by the president and cashier of the Bank of
Milledgeville was, under the charter of the bank (Acts 1835, p. 36),
a good conveyance of the land.
 (a) The deed to which the above ruling applies was not rendered void
because the grantee, taking as an individual, was one of the officers
who acted for the bank.
3. A deed to land, executed in this State on the 29th day of April, 1850,
purporting in its caption to be executed in a designated county, and to
be attested by a justice of the inferior court of a different county, there
being no aliunde evidence to show that it was in fact executed in the
county for which the official witness was commissioned, was not entitled
to record, and a certified copy thereof from the records of the county
in which the land was situated was inadmissible in evidence, over ap-
propriate objection, although sufficient cause was shown for the non-
production of the original.
4. On the issue of forgery, where a witness testified that previously to the
trial he had compared the original signature of the grantor in a deed
attacked as a forgery with other writings of the grantor which were in-
troduced in evidence, and which were proved by the testimony of another

witness to be in the writing of the grantor, and that in the opinion of the first witness, from a comparison of the two papers which were before him at the same time, the signature to the original deed attacked as a forgery was the genuine signature of the grantor therein named, it was erroneous, after an accounting for the loss of the original, to refuse to admit in evidence a certified copy thereof, upon the ground that the evidence was insufficient to authorize a submission of the issue of forgery to the jury. But, for reasons stated in the opinion, the judgment granting a nonsuit will not be disturbed on account of the error above mentioned.

JUNE 22, 1910.

Equitable petition. Before Judge Park. Decatur superior court. May 12, 1909.

The Flint River Lumber Company instituted suit against G. O. Smith and the Smith Lumber Company, a firm composed of J. W. White and J. F. M. Smith, for the recovery of a tract of land and damages on account of trespasses committed thereon. The plaintiff based its right to recover on an alleged grant from the State and an unbroken chain of title from the State's grantee to itself. On the trial the plaintiff offered in evidence a certified copy of a deed from the Bank of Milledgeville to James U. Horn, alleged to be one of the deeds in its chain of title. The material parts of the deed were as follows: "Georgia, Baldwin County. This indenture made the 29th day of April, in the year of our Lord 1850, between the Bank of Milledgeville, located in the city of Milledgeville, in the county and State aforesaid, of the one part, and James U. Horn, of the same place, of the other part, witnesseth: That the said Bank of Milledgeville for and in consideration of the sum of one thousand dollars in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath granted." etc., "unto the said James U. Horn, his heirs and assigns," the lot of land in dispute and other lands. "To have and to hold the said described lots of land," etc., "to the said James U. Horn, his heirs, executors, administrators, and assigns. in fee simple; and the said Bank of Milledgeville for itself and assigns the said bargained premises unto the said James U. Horn, his heirs and assigns, will warrant and forever defend the right and title thereof against himself and against the claims of all other persons whatever. In witness whereof, Walter H. Mitchell, president, and James U. Horn, cashier of the Bank of Milledgeville, on the day and year therein mentioned. signed the name and affixed

the seal of said corporation thereto and delivered the foregoing deed as the act of the Bank of Milledgeville. [Signed] W. H. Mitchell, L. S., President, James U. Horn, L. S., Cashier. Signed, sealed, and delivered in the presence of: A. M. Nisbet, James Jackson, J. I. C. W. C." Counsel for the defendants objected to the admission of this deed in evidence, upon the following grounds: "(1) Because the preliminary proof in reference to the loss of the original was not sufficient; (2) because the deed purports to be a deed between the Bank of Milledgeville and James U. Horn, and is not signed by the Bank of Milledgeville, but is only signed by W. H. Mitchell, L. S., President, James U. Horn, L. S., Cashier; (3) because there is no corporate seal attached to the deed, and there is no seal or scroll represented to be the seal of the Bank of Milledgeville attached to the deed; (4) because it is a deed of James U. Horn, Cashier, to James U. Horn individually, and is a void conveyance as between these parties; (5) because W. H. Mitchell, President, had no authority to convey the property of the bank, that the bank could only convey property through the authority of its directors; (6) because the deed appears to have been executed in Baldwin county before the judge of an inferior court of another county, and was therefore not entitled to be recorded." Upon the introduction of aliunde evidence, the court ruled that the preliminary proof of the loss of the original was sufficient, but excluded the deed on the ground that it was not properly executed, and that no corporate seal of the bank was attached to it so as to authorize the presumption that it was executed by authority of the bank. The plaintiff excepted and assigned error on the ruling. After the exclusion of the deed from evidence, the plaintiff's counsel announced to the court that under the court's ruling it would be impossible for the plaintiff to make out its case, but with the court's permission, and in order that all questions relating to plaintiff's title might be decided by the Supreme Court, it would proceed with its evidence only in so far as it related to its chain of title. Defendant's counsel interposed no objection to this, and the court remarked that in his opinion this would be the proper way in which to proceed with the case in order that all questions relating to the title might be settled. Plaintiff's counsel thereupon introduced further evidence for the purpose of making proof of the remaining deeds in its alleged chain of title. One of the alleged

deeds was from Simon W. Nicholls to Samuel T. Beecher. The
defendants had filed an affidavit of forgery to this deed, and the
issue of forgery was, by consent, tried with the other issues in the
case. The original deed was lost, but the plaintiff introduced a
certified copy from the records of the county in which it was re-
corded, and in connection with it an original deed from Luke G.
Weeks to Simon W. Nicholls, which was proved by the interroga-
tories of a witness to have been in the handwriting of Simon W.
Nicholls. In connection with the original deed just mentioned the
plaintiff also introduced a witness who testified, in effect, that he
had previously compared the signature of Simon W. Nicholls to
the lost original deed with the writing in the deed from Luke G.
Weeks to Simon W. Nicholls, having them both before him at the
same time, and that the writing was the same, and in his opinion
the signature to the lost deed was the genuine signature of Simon
W. Nicholls. After this evidence was introduced, the judge sus-
tained the objection of defendants' counsel to the admission of the
certified copy of the deed from Simon W. Nicholls to Samuel T.
Beecher, upon the ground that the execution of the deed had not
been sufficiently shown by the evidence to entitle the plaintiff to go
to the jury on the issue of forgery, the court holding that the testi-
mony of the two witnesses was not sufficient to authorize the sub-
mission of the question as to the execution of the deed to the jury.
Upon the close of the evidence the court awarded a nonsuit. The
plaintiff excepted to these rulings.

*Donalson & Donalson* and *J. R. Pottle*, for plaintiff.

*Albert H. Russell* and *T. S. Hawes*, for defendants.

ATKINSON, J. 1. The ruling announced in the first headnote
does not require elaboration.

2. The objections (2 to 5 inclusive) which were interposed to
the admission of the deed from the Bank of Milledgeville to James
U. Horn were without merit. This results from a construction
of the charter of the bank and the application of the ruling of this
court made in the case of *Veasey* v. *Graham*, 17 *Ga.* 99 (63 Am. D.
228). The act incorporating the Bank of Milledgeville, among
other things, declared: "That the bills obligatory and of credit,
notes, and other contracts whatsoever in behalf of the said cor-
poration shall be binding upon the company; provided, the same be
signed by the president and countersigned by the cashier of said

corporation." Acts 1835, p. 36, sec. 9. Similar language was contained in the charter of the Bank of Hawkinsville. Acts 1831, p. 43, sec. 8. Construing and applying that language it was held in the case of *Veasey* v. *Graham,* supra, that a deed executed like the present was sufficient in point of form and was prima facie a good deed. This meets objections 2, 3, and 5. As to the fourth objection it may be added that the fact that James U. Horn, who as cashier was one of the officers who signed for the bank, was, in his individual capacity, the grantee named in the deed did not render it void. *Veasey* v. *Graham,* supra.

3. Another objection to the deed from the Bank of Milledgeville to James U. Horn was that it appeared to have been executed in Baldwin county before the judge of an inferior court of another county, and therefore was not entitled to be recorded. The deed appears to have been executed on the 29th day of April, 1850, and the manner and sufficiency of its execution to authorize its record depends upon the law which was in force at the time of its execution and record. An examination of all the published acts and digests prior to the Code of 1861 discloses that the law in force at the time of the execution of the deed in question, regarding the attestation of deeds in this State by notaries public, judges of the superior courts, justices of the inferior courts, and justices of the peace, was the act approved December 24, 1827. By section 3 of that act it was provided: "Every deed of conveyance or mortgage, on either real or personal property, hereafter to be made may, upon being executed in the presence of and attested by a notary public, judge of the superior court, justice of the inferior court, or justice of the peace (and in cases of real property by one other witness), be admitted to record and make evidence in the different courts of law and equity of the State as though the same had been executed, proved, and attested as heretofore required by the laws of this State in cases of deeds to real property." Prince's Digest, 165-6; Cobb's Digest, 171. Under this law one of the requirements for the proper execution of a deed to land was that it should be attested by one of the officers designated. · The act does not purport to give them extraterritorial jurisdiction for the purpose of attesting deeds. The caption of the deed under consideration was, "Georgia, Baldwin County." It was not stated in the attestation clause, or elsewhere in the deed, that it was in fact executed in another

county, and there was no aliunde evidence to that effect. The presumption is that the situs of its execution was Baldwin county. *Rowe* v. *Spencer,* 132 *Ga.* 426 (64 S. E. 468). The deed was attested as follows: "Signed, sealed, and delivered in the presence of: A. M. Nisbet, James Jackson, J. I. C. W. C." There was no official seal attached, nor anything to show the official character of the witness, except the letters which follow the name of the witness James Jackson. At that time there were justices of the inferior courts of the various counties of the State, who were authorized, among other things, to attest deeds. If the letters which follow the name of James Jackson characterize the witness as the official witness who attested the deed, and the letters be held to indicate that the witness was a justice of the inferior court of some county, the name of which commenced with the letter "W," it will be a different county from that of Baldwin, where the caption of the deed prima facie showed the situs of its execution to be. Thus it appears that the evidence relied upon to show the official character of the witness would show the officer to be such only in a different county from that where he purported to act. In 1850 James Jackson, as the justice of the inferior court of a different county from the county of Baldwin, did not have authority, under the law, to attest deeds in Baldwin county. The inferior courts were first established by the act approved December 23rd, 1789, sec. 36, et seq. (Watkins' Digest, 389), and their jurisdiction and the jurisdiction of the judges thereof defined. The law with regard to justices of the inferior courts and their jurisdiction was amended from time to time. Watkins' Digest, 480, 619; Cobb's Digest, 206, 1121, et seq.; Prince's Digest, 130, 131, 433, 910. Sections 4 and 6 of art. 3 of the constitution of the State, adopted May 13th, 1798 (Watkins' Digest, 39, 40), provided that the justices of the inferior courts should be appointed by the General Assembly and commissioned by the Governor, to hold their commissions during good behavior, or as long as they should reside in the counties, respectively, for which they should be appointed, unless removed in a manner designated, and provided that the powers of the court of ordinary or register of probate should be vested in the inferior courts. These several changes in the law occurred prior to the execution of the deed under consideration. Subsequently to that time the law relating to inferior courts was em-

bodied in the Code of 1863, §§ 276 to 287, and the Code of 1867, §§ 336 to 347, and §§ 4052 to 4057. But the jurisdiction of the justices of the inferior courts of the several counties of the State always related to the performance of official acts within the respective counties for which they were commissioned. While the judges were authorized to attest deeds, they were authorized to do so only in the counties of their appointment. They were county officers, and had no official authority outside of the counties for which they were commissioned. The official attestation of a deed being an official act, it could not be exercised beyond the limits of the county for which the justice was commissioned. In this connection see remarks of Nisbet, J., in *Fain* v. *Garthright,* 5 *Ga.* 6-12, as approvingly cited in *Hammond* v. *Wilcher,* 79 *Ga.* 421 (5 S. E. 113). The plaintiff in error insists that the inferior courts were courts of record, and being such, under Civil Code, § 2706, as construed and applied in the case of *Gress Lumber Co.* v. *Coody,* 99 *Ga.* 775 (27 S. E. 169), the witness James Jackson, as judge of the inferior court, had authority to attest deeds anywhere in the State, and it became immaterial that he was not commissioned as a justice of the inferior court for the county of Baldwin. In the case cited it was said: "Under section 2706 of the code, a judge of a court of record may attest a deed in any county in this State. That section declares that 'if executed in this State it must be attested by a judge of a court of record of this State, or a justice of the peace, or notary public, or clerk of the superior court in the county in which the three last-mentioned officers, respectively, hold their appointments,' etc. It will be seen, therefore, that while the statute requires that a deed, when attested by one of the three last-mentioned officers (namely, a justice of the peace, or a notary public, or a clerk of the superior court), shall be attested in the county in which such officer holds his appointment, it expressly excepts from this requirement an attestation by a judge of a court of record." It will be observed that this ruling was based on a construction of the provisions of the code which contained an exception with regard to judges of courts of record, who were put in one class, while justices of the peace, notaries public, and clerks of courts of record were put in another class; and it was held, as the latter were expressly restricted in the matter of acting as attesting witnesses to deeds to the counties in which they respectively

held office, while there was no such restriction as to the former, that judges of courts of record could attest deeds in any county in the State.    The first appearance in this State of the classification and exception above stated was in the Code of 1863, § 2868.    Prior to that time, while justices of the inferior courts could attest deeds, they did so under the statute which authorized them, as such, to do so, and could only act in the territory of the county in which they held office.    But, as was said in the case of *Gress Lumber Co.* v. *Coody,* supra, the section of the code above mentioned changed the law as it stood prior thereto, "the whole subject having been fully considered by the codifiers, and it being manifestly their intention to revise and alter the existing law."    After the adoption of the code the statute no longer designated judges of the superior courts or justices of the inferior courts as authorized to attest deeds, but declared generally that the judge *of a court of record* might so act, and expressly named the class of officers whom it declared might act only in the county in which they held office.    Though the inferior courts might have been courts of record, the ruling made in the case of *Gress Lumber Co.* v. *Coody,* supra, is not authority for holding that a justice of the inferior court was authorized to attest a deed beyond the limits of the county for which he was commissioned at the date of the deed now under consideration, while the act of 1827 was in force, and long before the adoption of the code of 1863.    It follows that the deed was improperly admitted to record, and there was no error in excluding from evidence a certified copy thereof on the objection urged thereto by the defendants in error.

4. Another assignment of error complains of the refusal of the judge to admit a certified copy of a deed from Simon W. Nicholls to Samuel T. Beecher.    The deed was attacked by an affidavit of forgery, and the issue thus made was, by consent, on trial with the issues involved in the main case.    Evidence was admitted, without objection, tending to show that a different deed was in the handwriting of Simon W. Nicholls, the original of which was also admitted without objection.    There was still further evidence, which was admitted without objection, that a witness had before the trial compared the writing contained in the original deed admitted in

evidence, and shown to be the writing of Simon W. Nicholls, with the signature of Simon W. Nicholls to the deed which was lost. The witness who compared the writing had the two original deeds before him at the same time, and, after having so compared them, testified that the signature to the lost deed was, in his opinion, the genuine signature of Simon W. Nicholls. The court excluded the copy deed from evidence, on the ground that its execution had not been sufficiently shown to entitle the plaintiff to go to the jury on the issue of forgery. It thus appears that the question which the court ruled upon was as to the sufficiency of the proof made to entitle the plaintiff to submit his case to the jury on the issue of forgery, and that the ruling was not as to the admissibility of evidence offered to show the genuineness of the deed under consideration. Independently of the question whether it was proper to permit the witness, over appropriate objection, to testify as to his opinion touching the genuineness of the signature of Simon W. Nicholls to the lost deed, evidence to that effect having been admitted, it was sufficient to authorize the plaintiff in error to go to the jury on the issue of forgery, and it was error on that account for the judge to exclude the certified copy of the deed. But the judgment granting a nonsuit will not be reversed on account of this error, it being recited in the bill of exceptions that after the ruling of the court excluding the deed, counsel announced to the court that under that ruling it would be impossible for the plaintiff to make out its case, and he would only introduce further evidence, with the court's permission, in order "that all questions relating to the title might be settled," and there being no contention in the brief of counsel for plaintiff in error before this court that the judgment granting a nonsuit was erroneous if the ruling of the trial court in excluding the deed from the Bank of Milledgeville to James U. Horn should be sustained. We have seen that several of the objections to the deed last mentioned were insufficient, while one of them was sufficient, which requires an affirmance of the ruling excluding the certified copy of that deed from evidence. Hence it follows that the judgment of the court below will be affirmed.      *Judgment affirmed. All the Justices concur.*