E. W. RICE et al., Appellants, v. FRIEND BROTHERS COMPANY et al., Appellees.

**APPEAL AND ERROR:** Decisions Reviewable—Ruling on Demurrer—New Trial. The correctness of a ruling on a demurrer may be raised (a) by direct appeal, or (b) by motion for new trial. See Sections 3561, 3564, 3755, 4101, Code, 1897.

APPEAL AND ERROR: Decisions Reviewable—Order For New Trial. An order granting a new trial because of a former ruling sustaining a demurrer may be reviewed on appeal, even though the order for new trial was not accompanied by an order *setting aside the said ruling on demurrer.* See Sections 3755, 4101, Code, 1897.

COUNTERCLAIM: Requisites and Sufficiency—Breach of Warranty. Damages for breach of an express or implied warranty in the sale of goods, constitutes a proper counterclaim in an action for the price of said goods. See Section 3570, Code, 1897.

PLEADING: Demurrer—Counterclaim Good in Part. A demurrer will not lie to a counterclaim consisting of numerous non-recoverable items and *one* recoverable item. See Section 3561, Code, 1897.

SALES: Breach of Warranty—Pleading—Knowledge of Falsity. The rule that a pleader, in an action at law for damages for false representations, must allege that the maker of the representations *knew* they were false, has no application where the damages sought to be recovered are for breach of warranty. See Section 3559, Code, 1897.

FRAUDS, STATUTE OF: Debt or Default of Another—Assignee of Account Met With Plea of Breach of Warranty. An assignee of an account for goods sold may not escape a plea of breach of warranty, with consequent damages, by claiming that the enforcement of the claim for damages against him would compel him to "answer for the debt, default or miscarriage of another," to wit, the original vendor. Section 4625, Par. 3, Code, 1897.

COUNTERCLAIM: Nature of—Common-Law Set-Off. "Counterclaim" includes common-law "set-off." Section 3570, Code, 1897.

SALES: Warranties—Implied Warranties. An executory sale by a manufacturer of a definite thing, to be used for a definite purpose, and so known to the seller, carries an implied warranty of marketableness and reasonable fitness for the purpose intended.

APPEAL AND ERROR: Review—Discretion of Court—New Trials. An order granting a new trial is, ordinarily, all but conclusive on the appellate court. Section 3755, Code, 1897.

PLEADING: Form and Allegation in General—Failure of Consideration. Total failure of consideration is, in effect, pleaded by an

insistence by defendant that he go hence without recovery by plaintiff, because the warranted goods, for the price of which suit is brought, were worthless. Sections 3070, 3629, Code, 1897.

SALES: Remedies of Vendee—Breach of Warranty—Return of Goods Not Exclusive Remedy. A contract provision that, if a warranty should fail, the goods might be returned, does not, of itself, establish an exclusive remedy for the vendee. Since it is not couched in terms of exclusion, the vendee may *keep the goods and counterclaim for the damages.*

SALES: Remedies of Vendee—Breach of Warranty—Conduct Precluding Rescission—Right to Counterclaim. After learning that warranted goods are worthless, a vendee may so use, handle and sell them as to absolutely close the door to a rescission; *yet he may counterclaim against the price for all damages sustained by him by reason of the breach of the warranty,* not including, however, goods sold or used after fully discovering their worthless character.

SALES: Rescission by Vendee—Conduct Working Forfeiture of Right. Retention and sale of warranted goods after fully discovering their worthlessness, works a forfeiture of the right to rescind.

SALES: Remedies of Vendee—Breach of Warranty—Subsequent Sale of Goods—Right to Counterclaim. Counterclaim for breach of warranty will not lie as to goods sold by the vendee after fully discovering their worthless character.

*Appeal from Woodbury District Court.*—WILLIAM HUTCHINSON, Judge.

WEDNESDAY, FEBRUARY 14, 1917.

A DEMURRER was sustained to a counterclaim filed by the defendants in a suit against them for the purchase price of some paint delivered to them. At the close of the trial, a verdict was rendered against the defendants. Subsequently, a motion for new trial, filed by defendants, was sustained, and the plaintiffs appeal from that ruling.—*Affirmed.*

*J. W. Hubbard* and *Henderson & Fribourg,* for appellants.

*Lynn & Hallam* and *George W. Finch,* for appellees.

SALINGER, J.—I.   There was a counterclaim and amendments, which in their essence allege that, in August, 1908, defendants received from the United Commercial Company, a corporation existing under the laws of California, a certain quantity of so-called roof paint, to be used in the business of defendant; that the shipment sent was upon a purchase made of certain agents of said company, who are now the plaintiffs suing for the price by reason of an assignment made to them, without consideration, and merely for convenience in suing and collecting, and which they took with knowledge that the paint shipped had proven worthless; that the sale was effected on representations made by the company and its said officers, agents, and successors; that the paint to be shipped was good paint and well calculated to give good service as a roof paint; that the representations made by said assignees as officers and agents of the seller were what principally induced defendants to buy; that these officers and agents stated that they would warrant and guarantee said paint to be of good and lasting quality and first-class roof paint, and if the same did not prove to be as thus represented, defendants need not retain same, but might return it without charge or compensation; that, in addition thereto, there was a written guaranty accompanying the shipment, which paper has been lost.   It was signed by one of the assignee plaintiffs, and was, in substance, that the company of which the signer was president guaranteed that the paint was a good and serviceable roof paint, guaranteed to be such for a term of five years after placing it upon a roof, and that it was especially calculated for wood, felt, iron and tin roofs.  It is further averred, in effect, that the paint was utterly worthless; that it destroyed roofs upon which it was placed, instead of being a benefit to them, and that this has damaged the defendants as stated in an exhibit attached to the counterclaim as part thereof. It appears in the counterclaim that, July 27, 1909, the de-

fendants wrote the company, expressing entire dissatisfaction with the character and endurance of the paint received, and asserting that, instead of lasting five years, a roof thoroughly painted early in May needed repainting then; that the roof was as dry as if it had not been painted; that the body of the paint rubbed off under the finger like dry dust; that the paint was taken on the company's guaranty as a good and serviceable article, which it proved not to be, and that the unused part of it was at the disposal of the company.

To this counterclaim, a demurrer was interposed. The demurrer is, in effect:

(1)  The counterclaim shows that a cause of action, if any, against the company, is based on its sale, guaranty and warranty, and the company is not a party to the action.

(2)  The guaranty and warranty pleaded prescribes the remedy which must be pursued, namely, the return of the goods without charge.

(3)  There being an allegation that defendants by their letter elected to exercise their right under said guaranty and warranty to return the paint without charge, this is an election which precludes them to claim damages for a breach of warranty.

·(4)  The damages pleaded are too remote and speculative to be recovered on as a result of the alleged breach of warranty.

(5)  There is no right to recover against the plaintiffs, because it is not shown that the cause of action relied on in the counterclaim arose out of the contract set forth in plaintiff's petition, or in connection with the subject of the action.

(6)  The assignee plaintiffs are not shown to have assumed or to have had any consideration for assuming the alleged guaranty and warranty, because it is not alleged that any part of the purchase price was paid to plaintiffs.

(7)    There is no cause of action against plaintiffs because the alleged statements and representations were no more than expressions of opinion as to the merits of the paint.

(8)    The contract of sale relied on is written, and defendants may not change it or add to it a parol agreement or warranty.

(9)    Any attempt to hold the assignees liable is an attempt to make them assume the obligations of another, and is within the statute of frauds, because such assumption must be, and is not, evidenced in writing.

(10)    There is no allegation that plaintiffs knew representations made to be false when made.

This demurrer was sustained.    A new trial was granted on a motion asserting that it was error to sustain the demurrer.    As said, this is an appeal from the granting of a new trial.    If it was error to sustain the demurrer, it was not error to sustain the motion for new trial.

### 1-a

Something is claimed for the fact that the defendants did not appeal from the sustaining of the demurrer, and cases relied upon by appellee are well distinguished by appellant, in that they do involve direct appeals from ruling on demurrer.    But we think this is an immaterial contention.    The statute makes it a ground for new trial if error in law was committed upon the trial and duly excepted to.    Section 3755, Code, 1897.    The question, therefore, is not what we should do if the ruling had been appealed from, but whether the trial judge erred in sustaining the motion for new trial on the ground that he had erred in sustaining the demurrer.    In other words, one who desires to complain that a demurrer was sustained may present that complaint by appeal, or by motion for a

1. APPEAL AND ERROR: decisions reviewable: ruling on demurrer: new trial.

new trial. It is only if he does neither that the ruling be-
comes that finality which appellant contends it is here.

### 1-b

**2. APPEAL AND ERROR : decisions reviewable : order for new trial.**    The motion prayed a new trial on the ground that error had been committed in sustaining the demurrer, and asked, in addition, that said ruling be set aside. The rul-
ing sustaining the motion recites that the same is sustained
in so far as it prays a new trial and to set aside the verdict.
The failure to speak in express terms concerning the setting
aside of the ruling on demurrer is thought to affect the
right to have the ruling on demurrer reviewed as a step in
reviewing the propriety of granting the new trial. The
only concern we have with the sustaining of the demurrer
is on whether the court erred in holding at the last that it
had erred in sustaining the demurrer. For the purposes
of such limited inquiry, it is ample that a motion for new
trial was sustained on the ground that error was committed
by sustaining the demurrer.

### 1-c

**3. COUNTERCLAIM : requisites and sufficiency : breach of warranty.**    We think the contention that the coun-
terclaim is not connected with the subject of
the action is without merit. The suit is for
the price of paint sold. The counterclaim
arises out of what happened in connection and on account
of that sale, and we think that Section 3570, Code, 1897,
sustains that this is a proper counterclaim.

**4. PLEADING : demurrer : counterclaim good in part.**    It may be conceded that some of the
items sought to be recovered for are too
speculative. Others are not. And if a single
item is recoverable, sustaining a demurrer on the ground
that no recoverable damages were pleaded, is error.

Attempting a rescission and being found not entitled

to it did not estop the buyer, in the same suit in which the attempt was made, from setting off damages in reduction of the purchase price. This will have more extended attention in another connection.

**5. SALES: breach of warranty: pleading: knowledge of falsity.**
As defendants are not claiming upon fraud and deceit, it is immaterial argument that the pleading is bad, because it does not aver that the assignee plaintiff made representations knowing same to be false. Moreover, the assignee may not avoid by showing that *he* did not know that representations made were false, if his assignor made them, so knowing.

**6. FRAUDS, STATUTE OF: debt or default of another: assignee of account met with plea of breach of warranty.**
That there was no allegation that the assignee received any consideration is not material. Nor is here a case of obligation to pay the debt or perform the undertaking of another, which must be in writing to avoid the statute of frauds. Neither consideration received nor written assumption are requisite to charge these assignees with any defense which would prevail against their assignor. There is but one test. If the company had not made assignment of its claim for the price, would this counterclaim lie against the company? If it would, then, as we view it, express provisions of our statute permit it to be lodged against assignees, even though they had paid consideration and had had no knowledge that they were buying a claim as to which the consideration had failed. See Code, 1897, Sections 3047 and 3461; *Hayes v. Clinton County*, 118 Iowa 569; *Thomassen v. De Goey*, 133 Iowa 278; *Thomas v. Exchange Bank*, 99 Iowa 202; *Sherman v. Hale*, 76 Iowa 383; *Downing v. Gibson*, 53 Iowa 517; and *De Laval Separator Co. v. Sharpless*, 134 Iowa 28. We are at a loss to understand how one who sells paint, representing it to be of a quality fit for a known and intended use, can defeat recoupment by the buyer because the

paint proves worthless, by the simple expedient of turning the claim for the price over to some of its officers or agents and arranging to have them sue upon it.

We do not care to indulge in any fine-spun distinction between set-off and counterclaim. We think the statutory counterclaim includes the common-law and "revision" aspect of set-off. We plant ourselves upon the proposition already stated, that these assignees may not escape anything that their assignors would have to submit to. We think return of the goods is not the sole remedy of defendants, and that the representations charged were not mere opinions on value.

7. COUNTERCLAIM: nature of : common-law set-off.

We do not agree that the ruling on demurrer was, in any event, error without prejudice. It was error to sustain it.

II. The law that a written warranty may not be enlarged by parol is well settled but not applicable. So far as we are able to ascertain, there was no writing on representation of quality at the time the shipment was contracted for, except it be that one which authorizes the buyer to return without payment if the paint prove not as represented. But if that be effective, it merely limits the remedy if the goods are not according to representation, and does not of itself profess to define any representations. There is an agreement, however, that the salesman who takes an order has no authority to bind the company by any representation, verbal or written, unless the written representations appear in the order and the company thereafter acts. It is doubtful whether this would apply to managing officers such as the ones who took this order. It is unnecessary to devote much attention to this point, because the demurrer admits that there was a written guaranty which the corporation seller itself sent on with the ship-

8. SALES: warranties: implied warranties.

ment, and which, being admitted, does as much for defendants as does the oral representation or warranty upon which they claim. Again, this was an executory sale by a manufacturer of a definite thing to be used for a definite purpose, and with knowledge on part of the seller that the paint to be shipped would by defendants be used for a specific purpose; wherefore, this creates an implied warranty the paint was reasonably fit for that purpose, and marketable.

III. In *Hubbard v. Bartholomew*, 163

9. APPEAL AND ERROR: review: discretion of court: new trial.

Iowa 58, at 63, the thought is conveyed that a new trial may not be granted, where a verdict has been directed, unless the Supreme Court reviewing all the evidence may find there was a jury question. The case of *McLeod v. Shelby Mfg. & Imp. Co.*, (Ala.) 19 So. 326, cited in support, does not have any such question, but has some language to such effect. The proper construction of the *Hubbard* case is that if, on appellate review of the testimony, it is clear there was no conflicting question of fact, or no right to recover at all, then setting aside a directed verdict by granting a new trial will be reversed. It does not mean, and should not, that, if a verdict is directed against one who claims damages on evidence upon which a jury could find for him, we will reverse granting a new trial merely because, were we sitting as jurors, we would find that the evidence fails to sustain his claim. See *St. Pierre v. Foster*, (N. H.) 70 Atl. 289. In *Bottineau L. & L. Co. v. Hintze*, 150 Iowa 646, at 648, we sustain granting new trial which set aside a directed verdict, although the testimony was almost conclusive for the prevailing party, whose verdict was set aside. This all leaves untouched the rule that this court will not disturb granting a new trial unless to affirm would result in great injustice, and that ordinarily the granting of a new trial is not disturbed; and, on the other hand, that where,

as matter of law, there was no justification for granting a new trial, it will reverse because it was granted.

IV.  The argument for appellant in some way indicates a contention that defendants made no claim for damages for breach of warranty, and claimed only that they were entitled to rescind and had rescinded. We cannot so read the issues. Certainly they claimed damages in their counterclaim. It is true that, in both their answer and corrected and substituted answer, they set out that which they claim justifies a rescission, and perhaps that they have effected a rescission. But throughout these pleadings, which were never in any way challenged, they ask that plaintiff go hence without any recovery, because a thing that was represented to them to be good, serviceable roof paint was worthless, and did great damage when used. We think it fairly plain that, in part at least, they seek to avail themselves of what is held to amount to total failure of consideration, under the doctrine of *Swift & Co. v. Redhead,* 147 Iowa 94.

*10. PLEADING: form and allegation in general: failure of consideration.*

The question is not what defendants claim, but whether, no matter what they claim, they have done something which works that, as matter of law, they may set off no damages against the purchase price. If that be so, then, though every ground of the motion to direct verdict except this one was not well taken, granting of a new trial on account of having directed verdict must be reversed. On the other hand, if it was a fair question for the jury whether they were entitled to these damages by way of set-off, then we cannot reverse the grant of a new trial on account of a verdict's having been directed.

*11. SALES: remedies of vendee: breach of warranty: return of goods not exclusive remedy.*

For the proposition that there was no right to these damages as defensive matter, it is urged that there was a contract that, if the warranty failed, the goods might be

returned without payment, which, in *King v. Towsley,* 64 Iowa 75, we held to be a contract which authorized such return. We did not hold that such a contract created an exclusive remedy. This contract provision does no more than give a right which would exist without contract, and is not couched in terms of exclusion. We think its fair interpretation is that it permits the remedy therein stated without excluding any other remedies which the law gives.

### 4-a

The second argument is: (1) That, as matter of law, plaintiffs are entitled to judgment for the full amount of their claim, because, under the undisputed evidence, the defendants so conducted themselves with reference to the use, handling and selling of the goods sold, after they had notified plaintiffs that the paint was at their disposal, as that they are now estopped to claim rescission of the contract or right to repudiate the same; (2) because this is so, there may not be offset against the purchase price the damages, if any, sustained because the thing sold is worth less than it was represented to be worth, and less than the purchase price. We agree that, as matter of law, the defendants have accepted the goods, were not entitled to rescission and are estopped to rescind; and, if there were no other question, would have to hold that verdict was rightly directed.

12. SALES: remedies of vendee: breach of warranty: conduct precluding rescission: right to counterclaim.

It appears from the testimony of defendants as witnesses that the paint was first used in October, 1908, and that they found by next May or June that it complied with neither the representation nor the contract; that it evaporated and disappeared; and this was found on its first use in October, 1908, and in its use in February, 1909. As to a job finished in February, 1909, defendants were com-

13. SALES: rescission by vendee: conduct working forfeiture of right.

pelled to repaint because within two months the roof looked
as if it had never been painted.   About this time, this was
also the situation found concerning a job on the Lexington
block.  It will serve no useful purpose to go into this at great
length.  We think it is beyond all question that, long before
the notice by letter of July 27, 1909, in which the paint was
offered to plaintiff because it was worthless, defendants had
become convinced that it was absolutely so.  It appears fur-
ther, by roofers in their own employ, whom they put on as
their witnesses, that any competent roofer should have dis-
covered, at the outside, in not more than three months after
the paint was used, that it was worthless.   Some of these
witnesses say it could be told at a glance; some say its
worthlessness appeared in a week or two.   Refraining from
going into this matter at a length that is unjustified, it suf-
fices to say that, after this notice was sent, the use of the
paint continued, and that thereafter, as before, the defend-
ants were convinced it was worthless.   Notwithstanding
this knowledge, and though, as defendants put it, "it proved
to be worse the further it got," after their offer to return
they thus used the paint, and sold it to anyone desiring
to buy, and twice inventoried it as being part of the stock on
their premises.  We do not care to dwell upon the attempted
explanation that all this was due to their friendship for
the sellers, a desperate purpose to save them harmless, if
it could be done, and the further explanation that the in-
ventorying as was done is a sort of custom among or-
dinary business men, and does not involve a claim that the
property invoiced belongs to the invoicer who has it on his
premises and in his stock.  There is nothing in the evidence
to sustain this claim of friendly purpose, were it competent
if established, and we are not disposed to attach weight to
this testimony as to custom.

We think· it follows as matter of law:

14. SALES: remedies of vendee: breach of warranty: subsequent sale of goods: right to counterclaim.  (1) That the attempt to rescind and the offer to return are of no effect, which means that, as matter of law, these defendants, and not the sellers, are the owners of the paint; (2) that these vendees can recover no damages for the paint they used after they knew or believed it was worthless, nor damages suffered because they used it after that.

### 4-b

It may be a question of law whether title has changed. *Sempel v. Northern Hardwood Co.,* 142 Iowa 586; *Moore v. Howe,* 115 Iowa 62; *Underwood v. Wolf,* (Ill.) 23 N. E. 598; *Bassett v. Brown,* 105 Mass. 551, 557; *Holbrook v. Burt,* 22 Pick. (Mass.) 546; *Kingsley v. Wallis,* 14 Me. 57.

We think the following cases, among many others, hold that, under the evidence here, the defendants were not entitled to rescind, nor to deny that they owned the property and take with that all the consequences of ownership, including the payment of the purchase price, unless reduced by proper damages, and that they cannot refuse to pay for material they used after they felt satisfied that it was useless to do so; and that they may not recover damages of any kind that proximately flow from having used the material after they felt satisfied it was not fit to be used and would injure what it was used on. *Rock Island Plow Co. v. Meredith,* 107 Iowa 498; *Kupfer v. Michigan Clothing Co.,* (Mich.) 104 N. W. 582; *State Bank v. Brown,* 142 Iowa 190, at 198; *Stetson v. Northern Investment Co.,* 104 Iowa 393; *United States Rolling Stock Co. v. Atlantic & G. W. R. Co.,* 34 Ohio St. 450; *Lessee of Veasey v. Graham,* 17 Ga. 99; *German Sav. Bank v. Des Moines Nat. Bank,* 122 Iowa 737, at 745; *Duetzmann v. Kuntze,* 147 Iowa 158; *Hakes v. Thayer,* (Mich.) 131 N. W. 174; *Noble v. Olympia Brewing Co.,* (Wash.) 117 Pac. 241; *Acme Harvesting Co.*

*v. Carroll,* (Neb.) 114 N. W. 780; 35 Cyc. 141 to 143; *Fox v. Wilkinson,* (Wis.) 113 N. W. 669; *Wolf Co. v. Monarch Ref. Co.,* (Ill.) 96 N. E. 1063; *Hensen v. Beebe,* 111 Iowa 534; *Zipp Mfg. Co. v. Pastorino,* (Wis.) 97 N. W. 904; *Cream City Glass Co. v. Friedlander,* (Wis.) 54 N. W. 28; *Pitcher v. Webber,* (Me.) 68 Atl. 593; *Meader v. Allen,* 110 Iowa 588; *McCormick Harv. Mach. Co. v. Brower,* 94 Iowa 144; *Omaha Coal Co. v. Fay,* (Neb.) 55 N. W. 211; *Swift & Co. v. Redhead,* 147 Iowa 94; *Eagle Iron Works v. Des Moines Suburban R. Co.,* 101 Iowa 289.

Upon this, plaintiffs insist what we cannot sustain, to wit: That, because these defendants must be held to own this paint, and, therefore, may not return it and recover back what they paid, if anything, and because there are some items of damages that, under the circumstances, they cannot recover for, it follows as matter of law that they may not reduce the purchase price in any amount whatever; that, if one·accepts goods shipped, and may, therefore, not deny being their owner, and is not entitled to rescind, in some way this shuts out his right to reduce the price sued for by showing damages resulting from representations and warranties in making the sale. While there is illy considered language in cases which, on careless reading, would lead one to think that, if one attempts to rescind and fails, there is a conclusive election, and that in such event he may, in the very case in which he made an abortive attempt to rescind, neither rescind nor set off damages in reduction, we think such is not the law, and that it is overwhelmingly settled that, though it be rightly held the goods have been accepted, and that, therefore, the buyer may neither rescind nor repudiate the contract, he yet may, either by counterclaim or as matter of defense, present that against the price there should be set off what the buyer proximately lost through false representation or breach of warranty, the only difference in that respect be-

tween a counterclaim and pure defense being that on counterclaim the recovery might be more than the purchase price.

Of course, a contract of sale may be rescinded for breach of warranty. *Timken Carriage Co. v. Smith & Co.,* 123 Iowa 554. But it hardly follows that therefore there is no other remedy.

Though one is not entitled to assert either non-acceptance or rescission, this does not bar his recovering damages for a breach of warranty of quality. *Miller v. Moore,* (Ga.) 10 S. E. 360; *Morse v. Moore,* 83 Me. 473; *Underwood v. Wolf,* 131 Ill. 425 (a reduction in action for price); Benjamin, Sales (6th Ed.), Sec. 901; *Wheat v. Dotson,* 12 Ark. 699; *Davidson Bros. Co. v. Smith,* 143 Iowa 124; *Redhead Bros. v. Wyoming Cattle Inv. Co.,* 126 Iowa 410. But *King v. Towsley,* 64 Iowa 75, holds that, where there is a failure of consideration or breach of warranty, the vendee may elect to sue on the warranty, or to rescind by returning the property and bring action for the money received by the seller. This, however, is not, as appellant seems to think, couched in terms of exclusion; at least, not where all is done in the same case. It does not mean that the vendee defendant must succeed in an attempt to rescind, or, failing, cannot set off his damages for breach of warranty or failure of consideration. It does mean that if he *does* rescind he may not so offset. We think this is fairly what cases like *Case Threshing Mach. Co. v. Haven,* 65 Iowa 359, *Upton Mfg. Co. v. Huiske,* 69 Iowa 557, *Mallory Com. Co. v. Elwood,* 120 Iowa 632, at 635, *Thorson & Cassidy Co. v. Baker,* 107 Iowa 49, *Dooley v. Crabtree,* 134 Iowa 465, and *Fox v. Wilkinson,* (Wis.) 113 N. W. 669, 670, come to. And see also, *Cole v. Laird,* 121 Iowa 146; *Tyler v. Bowen,* 124 Iowa 452. And we hold in *Eagle Iron Works v. Des Moines Suburban R. Co.,* 101 Iowa 289, that the fact that the goods have been resold will work an acceptance, but will

not take away the right to recover damages for breach of warranty.

In our opinion, *Potter v. Harvey*, 30 Iowa 502, *Electric Storage Battery Co. v. Waterloo, C. F. & N. R. Co.*, 138 Iowa 369, *Omaha Coal Co. v. Fay*, (Neb.) 55 N. W. 211, *Myers v. Townsend*, 103 Iowa 569, *Russell & Co. v. Murdock*, 79 Iowa 101, *Garr, Scott & Co. v. Young*, (Tenn.) 62 S. W. 631, and *Stuart v. Hayden*, 72 Fed. 402, are not to the contrary, and are not authority for the claim that, if it should be found the buyer has accepted the goods and is their owner and, therefore, may not rescind, it follows he may not offset his damages.

We are of opinion that, for reasons stated herein, the court was in error in sustaining the demurrer to the counterclaim and the motion to direct verdict. It follows it was right in granting new trial. Wherefore, its last action is— *Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.